826 So.2d 633 (2002)
STATE of Louisiana
v.
Lawrence MELANCON.
No. 2001-KA-1656.
Court of Appeal of Louisiana, Fourth Circuit.
August 21, 2002.
*635 Harry F. Connick, District Attorney, Scott Peebles, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Mary Constance Hanes, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge DAVID S. GORBATY).
TERRI F. LOVE, Judge.

STATEMENT OF CASE
On August 5, 1999, the defendant, Lawrence Melancon, was charged by bill of information with possession with the intent to distribute cocaine.[1] Defendant entered a plea of not guilty at his arraignment on August 10, 1999. The trial court held a preliminary and suppression hearing on September 10, 1999. The trial court found probable cause and denied defendant's motion to suppress evidence. After a two day jury trial, the defendant was found guilty of attempted possession with the intent to distribute cocaine on November 21, 1999. The defendant filed a motion for new trial on December 21, 1999, at which time the trial court conducted a hearing on the motion. On January 18, 2000, the trial court sentenced the defendant to serve five years at hard labor. The State filed a multiple bill of information on the same date. The defendant filed an objection to the multiple bill and a motion to reconsider sentence. The trial court denied the motion to reconsider sentence. On January 29, 2001, the trial court denied defendant's motion for new trial. A multiple bill hearing was held on July 20, 2001 at which time the trial court adjudicated the defendant to be a third felony offender. On November 27, 2001, the trial court vacated the original sentence imposed and resentenced defendant, under the multiple offender statute, to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. The *636 trial court denied defendant's motion to reconsider sentence.

STATEMENT OF FACT
At approximately 1:40 a.m. on July 23, 1999, New Orleans Police Officers David Osborne and Brian Warner were on proactive patrol in the Second District. The officers were driving down Dante Street and had reached the intersection of Dante Street and Birch Street when they observed the defendant and Thornton standing near the rear of a vehicle parked in the travel lane of Birch Street. The vehicle's driver side door was open. The officers observed what appeared to be a hand to hand narcotics transaction. The officers turned off the vehicle's headlights, turned onto Birch Street and approached the defendant and Thornton. When the officers got closer to the two men, they turned on their vehicle's headlights. Defendant and Thornton appeared stunned upon seeing the police officers and walked from the rear of the vehicle toward the front of their vehicle. Officer Warner detained Thornton while Officer Osborne requested that the defendant stop. The defendant did not comply and walked to the driver's side door which was open and threw something into the car. Officer Osborne detained the defendant and patted him down for weapons. The defendant was then placed in the back seat of the police vehicle. Believing that the defendant had thrown contraband into the front seat of the vehicle, Officer Osborne walked to the front of the vehicle. The driver's side door was still open. The officer observed a plastic bag containing twenty-six pieces of crack cocaine and a crumpled twenty dollar bill on the seat. Officer Osborne returned to the police vehicle and placed the defendant under arrest for narcotics possession. In a search incident to the arrest, the officer found $394.00 on the defendant.
Karen Lewis Holmes, a criminalist with the NOPD Crime Lab, testified that the substances found by Officer Osborne tested positive for cocaine.
The defendant introduced an affidavit of Johnny Thornton who claimed that the cocaine found in the vehicle belonged to him. The affidavit was witnessed by defendant and Thornton's great-aunt and grandmother.

ERRORS PATENT
A review of the record reveals that the trial court ruled on the defendant's motion for new trial after sentencing the defendant. Under La.C.Cr.P. art. 853, a motion for new trial must be filed and disposed of before sentence. The trial court's failure to rule on the merits of a motion for new trial prior to sentencing constitutes an error patent on the face of the record, and requires vacation of the sentence and remand. State v. Smith, 553 So.2d 934 (La.App. 4 Cir.1989). However, because the defendant's original sentence was vacated as a result of his multiple offender adjudication, the error resulting from the court's failure to rule on the motion for new trial before the original sentencing was cured. State v. White, 621 So.2d 884, 889 (La.App. 4 Cir.1993).

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, the defendant argues that the prosecutor's actions during closing argument were prejudicial and influenced the jury's verdict. Specifically, the defendant complains of the fact that the prosecutor crumbled the affidavit of Johnny Thornton during his closing argument. The prosecutor crumpled the affidavit while he argued that the affidavit did not have merit and questioned the credibility of the affiant.
La.C.Cr.P. art. 774 provides:

*637 The argument shall be confined to the evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
In State v. Langley, 95-1489, p. 7 (La.4/14/98), 711 So.2d 651, 659, the Supreme Court stated:
In any event, prosecutors are allowed broad latitude in choosing closing argument tactics. See, e.g. State v. Martin, 539 So.2d 1235, 1240 (La.1989). Although under La.C.Cr.P. art. 774 closing argument must be "confined to the record evidence and the inferences which can reasonably drawn therefrom," both sides may still draw their own conclusions from the evidence and convey such view to the jury. State v. Moore, 432 So.2d 209, 221 (La.1983), cert. denied 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983). "Before allegedly prejudicial argument requires reversal, the court must be thoroughly convinced that the jury was influenced by the remarks and that such contributed to the verdict." State v. Taylor, 93-2201, p. 21 (La.2/28/96), 669 So.2d 364, 375; State v. Jarman, 445 So.2d 1184, 1188 (La.1984). We also ask whether the remarks injected "passion, prejudice or any arbitrary factor" into the jury's recommendation. Moore, 432 So.2d at 220.
Louisiana jurisprudence on prosecutorial misconduct allows prosecutors wide latitude in choosing closing argument tactics. See State v. Martin, 539 So.2d 1235, 1240 (La.1989) (closing arguments referring to "smoke screen" tactics and defense "commipinkos" held inarticulate but not improper); State v. Copeland, 530 So.2d 526, 545 (La.1988) (prosecutor's waving a gruesome photo at jury and urging jury to look at it if they become "weak kneed" during deliberations held not improper). The trial judge has broad discretion in controlling the scope of closing argument. State v. Prestridge, 399 So.2d 564, 580 (La.1981).
In the case at bar, the prosecutor's actions were not prejudicial. While he crumpled the affidavit, he did not destroy it. By crumbling the paper, he gave emphasis to his argument that the document was worthless. The prosecutor questioned Thornton's credibility and the fact that Thornton did not appear to testify at trial.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 2
The defendant also contends that the trial court erred when it denied his motion for new trial. The defendant suggests that the trial court's failure to give a special jury charge on "mere presence" denied him a fair trial.
La.C.Cr.P. art. 807, which governs special jury charges, states:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
Failure to read a special jury charge constitutes reversible error only *638 when there is prejudice to the substantial rights of the defendant or the violation of some constitutional or statutory right. State v. Patterson, 99-994 (La.App. 5 Cir. 1/25/00), 752 So.2d 280; State v. Bailey, 97-493 (La.App. 5 Cir. 11/12/97), 703 So.2d 1325, 1330.
In State v. Davis, 2000-278 (La.App. 5 Cir. 8/29/2000), 768 So.2d 201, writ denied, 2000-2730 (La.8/31/2000), 795 So.2d 1205, the defendant requested the following special jury charge on "mere presence":
Mere presence of the defendant, NACARRO DAVIS, in the area where narcotics are found, or the mere fact that the defendant may have known the person in actual possession, is insufficient to prove constructive possession on the part of NACARRO DAVIS.
The trial court denied the request, stating that the issue of mere presence was addressed in its general charge, which provided:
Constructive possession connotes control of the thing. A person may be in constructive possession of a thing even though not in physical possession, if the thing is subject to his domination and control.
Joint possession connotes a thing which is in the physical custody of another if he willfully and knowingly shares with the other the right to control it.
It is not necessary for the state to show that the defendant was in actual possession of the thing. The state must show either actual, constructive or joint possession.

Davis, pp. 13-14, 768 So.2d at 210-211.
On appeal, the Fifth Circuit held that the language of the general jury charge concerning possession sufficiently covered the meaning of the requested special jury charge on mere presence.
In the present case, the defendant filed a request for a special charge on "mere presence." However, due to clerical delays, the trial court did not learn of the request until after the trial. The defendant filed a motion for new trial arguing that the failure to give the requested jury charge deprived him of a fair trial. The defendant sought to have the trial court charge the jury that the "[m]ere presence of the defendant, Lawrence Melancon, in the area where the drugs have been found, or mere fact that the defendant may have known the person in actual possession, is insufficient to prove constructive possession on the part of Lawrence Melancon."
After the trial court conducted a hearing on the motion for new trial, the trial court rendered written reasons for denying the motion for new trial. The trial court stated:
During trial of this matter, the testimony indicated that Lawrence Melancon was seen at the rear of an automobile engaging in what appeared to be a hand to hand transaction. Melancon then saw the police and threw an object back into the car. That object was later determined to consist of a substantial amount of cocaine. Thus, the evidence demonstrated that Melancon was in actual possession of the cocaine. The jury was subsequently instructed on actual and construction possession as follows:
Possession can be of two kinds: either actual possession, in which the prohibited substance is actually on the person of the offender, and constructive possession, in which the prohibited substance, although not actually on the person of the offender, is within his dominion and control.
To instruct the jury with the requested charge would in fact confuse the jury on an abstract principle of law unsupported by the evidence offered at trial.

*639 * * *
In the instant case, the jury was adequately instructed on actual and constructive possession. The requested instruction is not supported by any fact brought out at trial. To the contrary, the testimony of the police officer demonstrated that Melancon was initially in actual possession of the drugs. No one testified that Melancon was `merely present.' See State v. Davis, 00-278 (La.App. 5th Cir.8/29/00), 768 So.2d 201. The wording of the requested instruction is confusing. The person seen in actual possession of the drugs attributed to Melancon was in fact Melancon, and not another person as suggested by the wording of the requested charge. Melancon was seen in the act of discarding these drugs back into the car he had just exited. He was not `merely present.'
The trial court correctly summarized the testimony produced at trial. The officers observed what they believed to be a narcotics transaction. Officer Osborne stated that after the defendant saw the officers, he walked to the front of the vehicle and threw the contraband into the front seat of the vehicle. In light of such evidence, the requested jury charge was not applicable to the present case. As the trial court noted, there was no evidence that the defendant was "merely present." The testimony presented at trial revealed that the defendant was in actual possession of the narcotics. Thus, the trial court did not err in its ruling.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 3
The defendant further argues that trial court failed to adjudicate him a multiple offender. A revised minute entry of July 20, 2001, indicates that the trial court adjudicated the defendant a multiple offender on that date. A review of the transcript of the hearing held on July 20, 2001, reveals that the trial court did not actually speak the words "the defendant is adjudicated a multiple offender." However, the transcript indicates that an evidentiary hearing was held. Testimony was given by Officer Jay Jacquet on the defendant's identity as the person who committed the prior offenses. The State produced the documentation supporting its bill of information alleging defendant to be a third felony offender. After the State produced its evidence, there was a discussion concerning the sentence the trial court was going to impose under the multiple bill. Defendant argued for the application of the amendments to La. R.S. 15:529.1 provided for in Acts 2001, No. 403. The State informed the trial court that the amendments should have prospective application. The trial court indicated that the parties could provide the court with briefs on the issue and set a sentencing hearing for a later date.
At the sentencing hearing conducted on November 27, 2001, defense counsel acknowledged that the trial court adjudicated the defendant to be a third felony offender at the hearing on July 20, 2001. The trial court agreed and ordered that the minute entry be amended to provide that the defendant was found to be a third felony offender.
While the trial court did not state the words well known for adjudicating a defendant to be a multiple offender, it is obvious from a reading of both transcripts that the trial court found the State's evidence sufficient to prove the defendant was a third felony offender and that the trial court intended to sentence the defendant as such. Thus, there is no merit to the defendant's assignment of error.

*640 ASSIGNMENT OF ERROR NUMBER 4

The defendant contends that the trial court erroneously sentenced him under La. R.S. 15:529.1(A)(1)(b)(ii). He suggests that the trial court should have sentenced him under the amendments provided by La. Acts 2001, No. 403. The Louisiana Supreme Court and this Court have considered this issue previously and concluded that La. Acts 2001, No. 403 has prospective effect only and does not apply to persons who violated the statutes prior to the amendment. State v. Sugasti, XXXX-XXXX (La.6/21/02), 820 So.2d 518; State v. Mayeux, XXXX-XXXX (La.6/21/02), 820 So.2d 524; State v. Serpas, XXXX-XXXX (La.App. 4 Cir. 10/3/01), 798 So.2d 1178; State v. Legendre, XXXX-XXXX (La.App. 4 Cir. 10/3/01), 798 So.2d 1179; and State v. Carter, XXXX-XXXX (La.App. 4 Cir. 10/3/01), 798 So.2d 1181. As the defendant allegedly committed the present crime in 1999, the amendments of La. Acts 2001, No. 403 do not apply in the case at bar.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 5
The defendant also argues that his life sentence under the multiple bill is unconstitutionally excessive.
Article 1, Section 20 of the Louisiana Constitution of 1974 provides that "No law shall subject any person ... to cruel, excessive or unusual punishment."
A sentence within the statutory limit is constitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Caston, 477 So.2d 868 (La. App. 4 Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La. C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, supra; State v. Guajardo, 428 So.2d 468 (La.1983).
Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993). However, the entire Habitual Offender Law has been held constitutional, and, thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional. Johnson, 97-1906, pp. 5-6, 709 So.2d at 675; see also State v. Young, 94-1636, p. 5 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527. There must be substantial evidence to rebut the presumption of constitutionality. State v. Francis, 96-2389, p. 7 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must show by clear and convincing evidence that he is exceptional, which in this context means that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are *641 meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Lindsey, 99-3256, p. 5 (La.10/17/00), 770 So.2d 339, 343; Johnson, 97-1906, p. 8, 709 So.2d at 677. "Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations." Id.
In the case at bar, the defendant did not produce any evidence to prove that he should have been sentenced to a sentence less than the mandatory sentence of life imprisonment. In fact, a review of the appellate record reveals that the mandatory sentence of life imprisonment was well justified. While the State alleged in its multiple bill of information that the defendant was a third felony offender, the record indicates that the defendant had pled guilty to three felonies not listed in the multiple bill of information. The State had alleged in the multiple bill that the defendant had been convicted of possession of cocaine in August of 1997 and simple robbery in June of 1999. The appellate record also reveals that the defendant pled guilty to two counts of possession of stolen property and one count of possession with the intent to distribute cocaine in June of 1994.
There is no merit to this assignment of error.

CONCLUSION
Accordingly, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Co-defendant, Johnnie Thornton, was charged with possession of cocaine. On August 10, 1999, Thornton pled guilty to the charged offense and was sentenced to two years at hard labor. The sentence was suspended and Thornton was placed on two years active probation with special conditions.