SUSAN M. CHEHARDY, Judge.
 

 | ¾Alvin C. Hyman appeals his sentence of 80 years without probation or suspension of sentence, imposed upon him as a second-felony habitual offender. We affirm, but remand the case with an order to correct a patent error.
 

 This is the defendant’s second appeal in this case. He was charged with violation of La. R.S. 14:30.1, second degree murder, but following his trial a jury found him guilty of the lesser offense of manslaughter, a violation of La. R.S. 14:30.1. The trial court sentenced him to 40 years at hard labor. On appeal this Court affirmed the conviction and sentence, and the state supreme court denied writs.
 
 State v. Hyman,
 
 09-409 (La.App. 5 Cir. 2/9/10), 33 So.3d 271,
 
 writ denied,
 
 2010-0548 (La.10/1/10), 45 So.3d 1094.
 

 On June 12, 2009, the State filed a habitual offender bill of information alleging that the defendant was a second felony offender. The defendant filed written objections to the allegations in the habitual offender bill. On January 6, 2010, the trial court held a habitual offender hearing and denied the defendant’s objections.
 
 [1]
 
 The court vacated the defendant’s original sentence and imposed a |shabitual offender sentence of 80 years at hard labor without benefit of probation or suspension of sentence.
 

 The defendant made a timely oral motion for appeal with respect to the habitual
 
 *150
 
 offender adjudication and sentence. The defendant also filed a written motion for appeal and a motion to reconsider sentence. The trial court denied the motion to reconsider sentence and granted the appeal motion.
 

 FACTS
 

 The facts relating to the defendant’s manslaughter conviction are found in this Court’s previous opinion:
 

 In the early morning hours of August 6, 2006, Leslie Daigrepont was at Alvin C. “Chris” Hyman’s apartment when Mr. Hyman accused her of stealing narcotics and money from him. According to Mrs. Daigrepont, Mr. Hyman grabbed her by the throat, threw her to the floor, and attempted to “strip search” her. Mrs. Daigrepont escaped the apartment when someone unexpectedly knocked at Mr. Hyman’s front door.
 

 When she returned to her house, Mrs. Daigrepont described the confrontation to her husband, Joshua Daigrepont, and, her brother, Dirk Guidry. Although Mrs. Daigrepont denied Mr. Hyman’s accusations while he was questioning her, she admitted to her husband and brother that she had, in fact, stolen narcotics and money from Mr. Hyman earlier that morning.
 

 Later that morning, Mrs. Daigrepont was speaking on the telephone with Leslie Boyer, Mr. Hyman’s girlfriend, when Mr. Hyman commandeered the telephone to tell Mrs. Daigrepont that she and her family were “dead.” Mrs. Daig-repont’s brother, Dirk Guidry, then informed Mr. Hyman that he was coming to Hyman’s apartment to “beat his ass.” Mr. Hyman accepted the challenge, agreeing to meet Mr. Guidry there. Mr. Guidry and Mr. Daigrepont then drove to Mr. Hyman’s residence.
 

 [[Image here]]
 

 Mr. Daigrepont then drove with Mr. Guidry to Hyman’s house at about 9:00 a.m. They knocked on the door of Mr. Hyman’s second floor apartment and shouted for him to open the door. When they received no |4response, Mr. Daigrepont and Mr. Guidry went downstairs to Sharamie Brewer’s apartment, where they waited for about 20 to 30 minutes. As they were leaving Ms. Brewer’s apartment, Hyman arrived at the apartment complex.
 

 "When Mr. Hyman exited the passenger side of the car, he was holding a gun. Mr. Daigrepont saw the weapon and ducked between parked cars, but Mr. Guidry began yelling at Mr. Hyman.
 

 Mr. Daigrepont testified that Mr. Hy-man then raised the gun and pulled the trigger twice, but the weapon failed to discharge. Next, Mr. Hyman turned toward the car and asked an occupant whether there were any bullets in the gun. Hyman then turned back toward Guidry and fired a shot. Immediately, Hyman got back into the car.
 

 Mr. Daigrepont testified that, after Mr. Hyman was in the vehicle, he fired a shot through the car’s window at Mr. Daigrepont, who was crouched between parked cars. Mr. Daigrepont was unharmed.
 

 Sharamie Brewer witnessed the shooting from the window of her apartment at 126 Athania Parkway. She heard Mr. Guidry and Mr. Hyman arguing in the parking lot of her apartment complex but she could not make out what they were saying. She saw Mr. Hyman get out of a car, point a gun, and shoot Mr. Guidry.
 

 State v. Hyman,
 
 09-409 at pp. 2-4, 33 So.3d at 274-275.
 

 
 *151
 
 ASSIGNMENT OF ERROR NUMBER ONE
 

 In his first assignment of error, the defendant asserts the trial judge erred in vacating the original sentence and imposing a sentence of 80 years because the judge did not explicitly adjudicate the defendant to be a multiple felony offender.
 

 The defendant contends his habitual offender sentence is invalid because the trial court failed to explicitly hold that he was a habitual offender. The State responds that the defendant failed to preserve this issue for appellate review because he did not make a timely objection below. The State nevertheless ^addresses the merits of the claim, arguing it can be inferred from the record that the trial court intended to find the defendant to be a habitual offender.
 

 As the defendant argues, the record does not show that the trial court explicitly held him to be a habitual offender. At the habitual offender hearing, Joel O’Lear, whom the court recognized as an expert in the analysis and comparison of fingerprints, testified that fingerprints he took from the defendant in court matched those on the documents pertaining to the defendant’s predicate conviction. At the conclusion of the habitual offender hearing, the trial judge addressed defense counsel’s challenges to the predicate felony alleged in the habitual offender bill. The judge plainly and unequivocally rejected counsel’s arguments. The judge then vacated the defendant’s original sentence and imposed an 80-year habitual offender sentence.
 

 Contrary to the State’s assertion, the defendant is entitled to appellate review of this issue. The defendant’s argument is in the nature of an illegal sentence claim. Under La.C.Cr.P. art. 882, “[a]n illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.”
 

 When examined on the merits, the defendant’s argument does not prevail. Although the trial court did not explicitly hold that the defendant was a habitual offender, we can infer from the record that the court intended to adjudicate and to sentence him as a habitual offender.
 

 The facts in this case are comparable to those in
 
 State v. Melancon,
 
 01-1656 (La. App. 4 Cir. 8/21/02), 826 So.2d 633,
 
 writ denied,
 
 02-2407 (La.3/21/03), 840 So.2d 547. The defendant in
 
 Melancon
 
 complained that the trial court had failed to adjudicate him a habitual offender because the judge had not spoken the words “the defendant is adjudicated a habitual offender.” In
 
 Melancon,
 
 as in the instant case, the State produced proof of the predicate felony convictions and evidence of | (identity at a habitual offender hearing. At a subsequent sentencing hearing, Me-lancon’s defense counsel acknowledged that the trial court had adjudicated the defendant a third felony offender. The Fourth Circuit rejected the defendant’s argument, holding as follows:
 

 While the trial court did not state the words well known for adjudicating a defendant to be a multiple offender, it is obvious from a reading of both transcripts that the trial court found the State’s evidence sufficient to prove the defendant was a third felony offender and that the trial court intended to sentence the defendant as such.
 

 Melancon,
 
 01-1656 at p. 8, 826 So.2d at 639.
 

 Accordingly, we find no merit to this assignment of error.
 

 ASSIGNMENT OF ERROR NUMBER TWO
 

 In his second assignment the defendant asserts the trial judge lacked au
 
 *152
 
 thority to accept a guilty plea from the defendant because that judge’s
 
 pro tem-pore
 
 appointment to the district court violated the separation of powers required by Article II, Section 2 of the Louisiana Constitution. Hence, the defendant asserts, the plea cannot be used against him in a multiple offender proceeding.
 

 The defendant complains that the 1996 guilty plea the State used to enhance his sentence was invalid because it was accepted by a judge sitting
 
 pro tempore
 
 in the Twenty-fourth Judicial District Court’s drug court. The defendant argues that Judge Joseph Grefer’s
 
 pro tempore
 
 appointment violated the constitutional doctrine of separation of powers, since the state’s judges are required to be elected. The State responds that the guilty plea was valid, since Judge Grefer was properly appointed as a judge
 
 pro tempore
 
 by the Louisiana Supreme Court.
 

 The defendant’s argument here is a restatement of the argument he made below in his written objections to the habitual offender bill. At the habitual |7offender hearing, defense counsel argued that the 1996 guilty plea alleged in the habitual offender bill was not constitutionally taken by Judge Grefer, since he was not a duly elected judge. The trial judge ruled, “I am going to deny your motion as to that, because that has been already taken up on numerous occasions, and has been found that they could take guilty pleas down in Drug Court.” Defense counsel objected to the judge’s ruling.
 

 We find no error in the trial court’s overruling of the defendant’s objection to the predicate conviction. Under Article V, § 5(A) of the Louisiana Constitution of 1974, the Louisiana Supreme Court has the authority to assign a sitting or retired judge to any court. The supreme court’s power to assign judges to assist courts within the judicial branch in furtherance of the administration of justice is explicit and unfettered.
 
 State v. Bell,
 
 392 So.2d 442, 442 (La.1981). Moreover, the supreme court’s power of appointment is not limited to cases in which a vacancy exists.
 
 Bell,
 
 392 So.2d at 443 n. 1;
 
 State v. Strahan,
 
 04-1971, p. 4 (La.App. 1 Cir. 5/6/05), 916 So.2d 209, 211.
 
 See also, State v. Chestnut,
 
 05-220, pp. 4-5 (La.App. 5 Cir. 11/29/05), 917 So.2d 573, 575.
 

 The defendant provided no authority to support his argument that denies the authority of a duly appointed
 
 ad hoc
 
 or
 
 pro tempore
 
 judge to accept a guilty plea. Accordingly, we find no merit to this assignment of error.
 

 ASSIGNMENT OF ERROR NUMBER THREE
 

 In his third assignment of error, the defendant contends the State failed to carry its burden of proof because it relied on a
 
 Boykin
 
 form that does not name the crime, without a transcript of the colloquy. The defendant asserts that in order for the State to use a prior guilty plea in a habitual offender proceeding, the State must prove the defendant knowingly and voluntarily entered the guilty plea, but the | sState cannot do so with a
 
 Boykin
 
 form that does not name the crime to which the defendant is pleading guilty.
 

 The defendant argues the evidence at the habitual offender hearing was insufficient to prove his habitual offender status, because the guilty plea form pertaining to the predicate conviction did not include the name of the offense to which he pleaded guilty. The State responds that the evidence at the habitual offender hearing was sufficient to prove the existence of the predicate felony conviction, and that the defendant was the same person who committed the predicate offense.
 

 
 *153
 
 To prove a defendant is a habitual offender, the State must initially prove the prior felony convictions and prove the defendant is the same person who was convicted of the prior felonies.
 
 State v. Mims,
 
 00-1507, p. 8 (La.App. 5 Cir. 12/26/01), 806 So.2d 760, 766,
 
 writ denied,
 
 02-0466 (La.2/7/03), 886 So.2d 88. The latter can be established by expert testimony matching the accused’s fingerprints with those in the record from the prior proceedings.
 
 State v. Kelly,
 
 01-321, p. 7 (La.App. 5 Cir. 10/17/01), 800 So.2d 978, 984,
 
 writ denied,
 
 01-3266 (La.11/1/02), 828 So.2d 565.
 

 When the State relies on a prior conviction based on a guilty plea to prove a defendant’s habitual offender status and the defendant denies the allegations in the habitual offender bill, the State bears the burden of proving the existence of the prior guilty plea and that the defendant was represented by counsel when it was taken.
 
 State v. Shelton,
 
 621 So.2d 769, 779-780 (La.1993). After the State meets this burden, the defendant must produce affirmative evidence of an infringement of his rights or of a procedural irregularity. If the defendant meets this burden, the burden shifts back to the State to prove the constitutionality of the plea, that is, that the plea was knowing and voluntary.
 
 Shelton,
 
 621 So.2d at 780 This final burden l3can be met if the State produces a “perfect transcript” articulating the
 
 Boykin
 
 colloquy between the defendant and the trial judge or any combination of a guilty plea form, a minute entry, or an “imperfect” transcript.
 
 Id.
 
 If anything less than a “perfect” transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant’s prior guilty plea was informed and voluntary and made with an articulated waiver of the three Boykin rights.
 
 Id.
 

 The defendant does not dispute that the State sufficiently established identity at the habitual offender hearing. As discussed under Assignment of Error Number One,
 
 supra,
 
 fingerprint expert Joel O’Lear testified that fingerprints he took from defendant in court matched those on the documents pertaining to defendant’s predicate conviction.
 

 Since the predicate conviction alleged in the habitual offender bill resulted from a guilty plea, the State was required to prove the existence of the conviction, and that the defendant was represented by counsel at the time he entered his guilty plea.
 
 State v. Shelton, supra.
 
 In order to meet that burden, the State introduced a certified copy of the bill of information in 24th Judicial District Court case number 96-5623, along with a completed guilty plea form and commitment pertaining to that case.
 

 The defendant argued that the guilty plea form was insufficient to show the plea was knowing and voluntary, since it did not include the name of the offense-attempt to possess marijuana with intent to distribute-with which the defendant was charged. The form included only the statutory citation of the offense, La. R.S. 40:979:966(A). The trial judge rejected the defendant’s argument and found that the predicate guilty plea was sound. The judge reasoned that the bill of information in case number 96-5623, which was included in the State’s habitual |inoffender evidence, provided that the defendant was charged with possession with intent to distribute marijuana. Thus, the defendant had adequate notice of the offense to which he was pleading guilty.
 

 We find no error in the trial court’s ruling that the State proved the constitutionality of the defendant’s predicate guilty
 
 *154
 
 plea. The trial judge properly weighed the entirety of the evidence submitted and found that the State met its burden of proving that the defendant’s 1996 guilty plea was informed and voluntary. The bill of information, the guilty plea form, and the minute entry admitted as State’s Exhibit 2,
 
 in globo,
 
 were sufficient to show the defendant’s prior guilty plea was constitutionally made.
 

 Accordingly, we find no merit to this assignment of error.
 

 ASSIGNMENT OF ERROR NUMBER FOUR
 

 In his fourth and final assignment of error, the defendant asserts the maximum 80-year sentence imposed in this case is excessive and should be reduced because maximum sentences are reserved for the most egregious and blameworthy offenders, but the defendant argues he does not fall into that category.
 

 The defendant contends his 80-year habitual offender sentence, the statutory maximum, is constitutionally excessive, arguing that he is not the most violent type of offender for whom maximum sentences are reserved.
 
 [2]
 
 The State responds that the sentence, while severe, is supported by the record.
 

 The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A |n sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering.
 
 State v. Smith,
 
 01-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice.
 
 State v. Lobato,
 
 603 So.2d 739, 751 (La. 1992). Even though a sentence is within statutory limits, it can be reviewed for constitutional excessiveness.
 
 Smith,
 
 01-2574 at p. 6, 839 So.2d at 4. In general, maximum sentences are reserved for cases involving the most serious violations of an offense charged and the worst type of offender.
 
 State v. Stacker,
 
 02-768, p. 8 (La.App. 5 Cir. 12/30/02), 836 So.2d 601, 607,
 
 writ denied,
 
 03-0411 (La.10/10/03), 855 So.2d 327.
 

 In reviewing a sentence for ex-cessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing the sentence.
 
 State v. Polizzi,
 
 05-478, p. 16 (La.App. 5 Cir. 2/14/06), 924 So.2d 303, 313,
 
 writs denied,
 
 06-1052 (La.11/3/06), 940 So.2d 660, and 08-2006 (La.1/30/99), 999 So.2d 751. In reviewing a trial court’s sentencing discretion, three factors are considered: (1) the nature of the crime, (2) the nature and background of the offender, and (3) the sentence imposed for similar crimes by the same court and other courts.
 
 Id.
 

 The trial judge is afforded wide discretion in determining a sentence and the court of appeal will not set aside a
 
 *155
 
 sentence for excessiveness if the record supports the sentence imposed, even when the trial judge does not provide reasons for the sentence.
 
 Polizzi,
 
 05-478 at p. 16, 924 So.2d at 313. The issue on appeal is | ^whether the trial court abused its broad discretion, not whether another sentence might have been more appropriate.
 
 Polizzi,
 
 05-478 at p. 17, 924 So.2d at 314.
 

 The trial judge gave extensive reasons for the sentence imposed. He said he was struck by the defendant’s deliberate cruelty in committing the offense. He pointed out that the defendant aimed his gun at the victim and attempted to fire at him. When the gun misfired, the defendant had the opportunity to withdraw from the confrontation, but he did not. The judge also noted that the defendant fired his weapon in a residential neighborhood where others could have been injured.
 

 We find the trial court did not abuse its broad discretion in imposing the maximum habitual offender sentence. First, the evidence at trial could have supported a conviction for the charged offense, second degree murder, an offense that carries a mandatory life sentence. Louisiana courts have found that the fact that the evidence might have supported a verdict of second degree murder is an appropriate sentencing consideration where the defendant has been convicted of the lesser offense of manslaughter.
 
 See State v. Roussel,
 
 424 So.2d 226, 231-232 (La.1982),
 
 overruled on other grounds by State v. Jackson,
 
 480 So.2d 263, 268;
 
 State v. Wooden,
 
 572 So.2d 1156, 1161 (La.App. 1 Cir.1990).
 

 In addition, the fourth circuit has recently affirmed an 80-year sentence for manslaughter as to two co-defendants who were found to be second-felony offenders. In
 
 State v. Johnson,
 
 09-0706, pp. 30-36 (La.App. 4 Cir. 5/26/10), 41 So.3d 1188, 1207-1210, the court found the maximum second-offender sentence was not constitutionally excessive where the defendant was one of two men who viciously beat the victim, fatally wounding him and discarding him in a dumpster, although the defendant did not have a lengthy prior record or a record of violent offenses. The court of appeal also upheld the 80-year second-offender sentence of 11sJohnson’s co-defendant in
 
 State v. Kelson,
 
 09-0204, pp. 14-15 (La.App. 4 Cir. 6/9/10), 40 So.3d 1194, 1203.
 

 Accordingly, we find no merit to this assignment.
 

 ERROR PATENT DISCUSSION
 

 This Court performed an patent error review of the original record in this case at the time of the defendant’s first appeal. He now is entitled to error-patent review of only the habitual offender proceedings.
 
 See State v. Gassenberger,
 
 02-658, p. 5 (La.App. 5 Cir. 12/11/02), 836 So.2d 271, 274.
 

 We have found a patent error that does not affect the sentence, but requires remand for correction. While the habitual offender transcript shows the trial court sentenced the defendant to a prison term of 80 years, the commitment shows the sentence imposed was 40 years. When the transcript conflicts with a minute entry, the transcript prevails.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983).
 

 Accordingly, we shall direct the trial court to amend the commitment to conform to the transcript.
 
 See State v. Major,
 
 09-370, p. 12 (La.App. 5 Cir. 11/24/09), 26 So.3d 289, 296,
 
 writ denied,
 
 09-2802 (La.6/18/10), 38 So.3d 320.
 

 DECREE
 

 For the foregoing reasons, the habitual offender sentence imposed by the district court is affirmed. The case is remanded and the district court is ordered to correct
 
 *156
 
 the commitment to conform to the transcript, showing the sentence imposed as 80 years.
 

 AFFIRMED; REMANDED WITH ORDER
 

 [1]
 

 . The trial judge did not explicitly state that he found defendant to be a second felony offender. That issue is discussed under Assignment of Error Number One,
 
 infra.
 

 [2]
 

 . The defendant filed a timely motion to reconsider sentence in the trial court, arguing the sentence was harsh in nature and was not supported by the facts adduced at trial. He did not allege grounds for his motion with specificity, as required by La.C.Cr.P. art. 881.1. He is entitled, nevertheless, to a review of the sentence only for constitutional excessiveness.
 
 See State v. Dupre,
 
 03-256, p. 7 (La.App. 5 Cir. 5/28/03), 848 So.2d 149, 153,
 
 writ denied,
 
 03-1978 (La.5/14/04), 872 So.2d 509.