ROBERT A. CHAISSON, Judge.
| ^Defendant, Rodney Washington, appeals his conviction and sentence for attempted manslaughter. For the reasons that follow, we affirm defendant’s conviction and sentence, as amended, and remand the matter with instructions.

PROCEDURAL HISTORY

On May 16, 2011, a St. John the Baptist Parish Grand Jury indicted defendant for the second degree murder of John Wactor, in violation of LSA-R.S. 14:30.1 (count one), and the attempted second degree murder of Carolyn Coleman, in violation of LSA-R.S. 14:27 and LSA-R.S. 14:30.1 (count two). In February of 2013, defendant proceeded to trial before a twelve-person jury. After considering the evidence presented, the jury found defendant not guilty as to the murder of John Wac-tor. However, as to the charge of attempted second degree murder of Carolyn Coleman, the jury was unable to reach a verdict, and the trial court declared a mistrial as to that count.
lain June of 2013, the State retried defendant on the charge of attempted second degree murder of Carolyn Coleman. At the conclusion of trial, the twelve-person jury found defendant guilty of attempted manslaughter. Defendant thereafter filed a motion for new trial, a motion for a post-judgment verdict of acquittal, and a motion in arrest of judgment, all of which were denied by the trial court.
On December 17, 2013, the trial court sentenced defendant as a multiple offender to twenty years at hard labor without benefit of parole, probation, or suspension of sentence. However, the trial court subsequently granted defendant’s motion to reconsider sentence and resentenced defendant to fifteen years at hard labor without benefit of parole, probation, or suspension of sentence.[1] Defendant now appeals.

FACTS

This case stems from shootings that occurred in Laplace on March 28, 2011, which resulted in the death of John Wac-tor and injury to Carolyn Coleman.
According to Ms. Coleman, in the early morning hours of March 28, she left an offtrack betting facility, and as she was walking down the street, two men in a truck, subsequently identified as Cornell Bolden and defendant, drove up next to her. After engaging in conversation with the men, Ms. Coleman got into the truck being driven by defendant. The three drove to Mr. Bolden’s house so he could get his truck, and they then met at a Laplace gas sta *748 tion. While there, Mr. Bolden bought Ms. Coleman some drinks, gave defendant some money, and left by himself.
Ms. Coleman and defendant talked about going to a motel to have sex, but defendant told her that he did not have enough money. Ms. Coleman then called |4her close friend, John Wactor, and got permission to use his residence. The two proceeded to Mr. Wactor’s trailer on Fir Street. Before the two exited the truck, defendant paid Ms. Coleman sixty dollars for sex. They then went inside the trailer, and Ms. Coleman introduced defendant to Mr. Wactor and confirmed that it was still okay for them to use the bedroom. Ms. Coleman and defendant proceeded to the bedroom and had sex. After they finished and dressed, the two left the bedroom and walked by Mr. Wactor, who was sitting on the sofa, to get to the door. Ms. Coleman was apparently in front of defendant, and as she turned the door knob, she heard a “pop.” She immediately opened the door and ran until she fell into a ditch. Not realizing that she had been shot, Ms. Coleman went back to the trailer to see what was going on; however, since she saw that defendant’s truck was still there, she did not go inside but rather stood outside the door. According to Ms. Coleman, defendant was positioned behind his truck and started shooting at her. Ms. Coleman pleaded with defendant not to kill her, at which point he returned to his truck and left. She proceeded to walk down the steps and experienced pain in her back, chest, and leg, which resulted from being shot four times. After defendant left, Ms. Coleman began screaming for someone to help her. A neighbor, who heard the gunshots and Ms. Coleman’s screams for help, called 9-1-1.
Deputy John Wetzel and Deputy Arthur Flott were dispatched to the scene. Upon arriving, Deputy Wetzel saw Ms. Coleman lying across the steps to the trailer, and upon entering the back of the trailer, observed Mr. Wactor with a single gunshot wound to the face. Ms. Coleman was subsequently transported to the hospital for treatment of her injuries.
In the meantime, Officer Walter Stevens, who was assigned to investigate the case, viewed the videotape from the gas station that Ms. Coleman and Udefendant had earlier visited. The tape showed Ms. Coleman with “two black male subjects.” Officer Stevens recognized Cornell Bolden as one of the men in the video and brought him in for an interview, at which time he identified the other male with him as defendant. Based on the information learned in his investigation, Officer Stevens went to the hospital and presented Ms. Coleman with a photographic lineup. Ms. Coleman positively identified defendant as the perpetrator. Ms. Coleman was subsequently shown another photographic lineup at the detective bureau, at which time she again positively identified defendant as the person who shot her.
Defendant learned that the officers were looking for him, and he voluntarily went to the investigations bureau for an interview. In his first interview, defendant denied meeting Ms. Coleman or being in Laplace in the early morning hours of March 28, 2011. However, after confronting defendant with the GPS information obtained from his telephone records showing that defendant had been in Laplace, defendant gave a second statement which was basically consistent with his trial testimony.
According to defendant, he and Ms. Coleman went to the Fir Street address to have sex. He paid her sixty dollars while they were still in the truck, and they then proceeded to go inside the trailer. After having sex, defendant and Ms. Coleman exited the bedroom and were headed toward the same door they had used to enter *749 the trailer. Defendant claimed that Mr. Wactor was standing by the edge of the sofa close to the doorway with his hands behind his back, and Ms. Coleman was walking on the side of defendant. Defendant stated that while Ms. Coleman exited the door, Mr. Wactor “upped the gun” into his face. Defendant threw his "hands up, as Ms. Coleman continued to walk out of the door. Defendant claimed that Mr. Wactor glanced over at Ms. Coleman, and as he did so, defendant went for | ,;the gun. Defendant and Mr. Wactor “tussled” for the gun, with both of them falling onto the sofa. Defendant claimed that during the struggle, the gun went off, firing a single shot into Mr. Wactor’s face. Defendant said that he believed that Ms. Coleman had set him up, and he wanted to get out of the trailer fast. In an attempt to leave, defendant then fired a series of shots out the door, but he was not aiming at anyone in particular. Defendant then ran out the trailer door, got into his truck, and left the area, in continued fear for his life. Defendant admitted that he fired four shots out the door in rapid succession, but claimed that he did not intend to hit Ms. Coleman.

DOUBLE JEOPARDY

In his first assigned error, defendant contends that his conviction for the attempted manslaughter of Ms. Coleman after a retrial violated the principles of double jeopardy. Defendant argues that “the State’s failure to prove that the shooting was not done in self-defense means that the defense of justification carried the day,” and therefore, “the State was es-topped from again trying appellant for the shooting injuries suffered by Ms. Coleman” because he acted in self-defense in that instance also.
Subsequent to his conviction for attempted manslaughter, defendant filed a motion in arrest of judgment asserting that his second trial violated the principles of double jeopardy and also violated the doctrine of collateral estoppel embodied in the Fifth Amendment. After a hearing, the trial court took the matter under advisement, and on December 12, 2013, denied defendant’s motion, concluding as follows:
After a review of the record and applicable law, this Court finds that the jury did not necessarily reach any final conclusion as to Mr. Washington’s self-defense claim in the shooting of Carolyn Coleman. The Court further finds that the evidence required to prove the Second Degree Murder of John Wactor and the evidence required to prove the | ./Attempted Murder of Carolyn Coleman are different. For the reasons set forth, this Court finds that Double Jeopardy did not attach where there was a mistrial on only one count and Defendant was re-tried for that count only.
Defendant now contends that the trial court erred in denying his motion in arrest of judgment. For the reasons that follow, we find no error in the trial court’s determination that the principles of double jeopardy were not violated by the retrial of defendant for the attempted second degree murder of Carolyn Coleman.
The Fifth Amendment to the United States Constitution, as well as Article I, § 15 of the Louisiana Constitution, prohibit placing a person twice in jeopardy of life or limb for the same offense. State v. Sandifer, 95-2226 (La.9/5/96), 679 So.2d 1324, 1328. LSA-C.Cr.P. art. 591 provides, in pertinent part, that “[n]o person shall be twice put in jeopardy of life or liberty for the same offense, except, ... where there has been a mistrial legally ordered under the provisions of Article 775.” Pursuant to LSA-C.Cr.P. art. 775(2), a mistrial may be ordered when “[t]he jury is unable to agree upon a ver- *750 diet.” In the present case, defendant’s retrial resulted from the jury’s inability to reach a verdict on the charge of attempted second degree murder of Carolyn Coleman. The State is not prosecuting defendant for the second degree murder of Mr. Wactor, as the jury found him not guilty of that count. Under these circumstances, defendant was not twice placed in jeopardy for the same offense. See State v. Taylor, 12-889 (La.App. 4 Cir. 4/3/13), 115 So.3d 523, 525.
The Double Jeopardy Clause also embodies the doctrine of collateral estoppel. In Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the United States Supreme Court explained that collateral estoppel “means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any | ¿future lawsuit.” A fact is considered “ultimate” if it is necessary to a determination of the defendant’s criminal liability. State v. Miller, 571 So.2d 603, 607 (La.1990). In discussing the application of collateral es-toppel to criminal cases, the United States Supreme Court explained that where a previous judgment of acquittal was based upon a general verdict, the court must examine the record of the prior proceeding, “taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.” Ashe v. Swenson, 90 S.Ct. at 1194.
In the instant case, defendant contends that since an issue of ultimate fact, self-defense, was decided in the first trial, then it cannot be relitigated in the second trial. In finding that the jury did not come to a final judgment as it relates to the issue of self-defense in the attempted second degree murder charge, the trial court reasoned as follows:
... the jury did not reach the conclusion that Mr. Washington acted in self-defense with regards to the Attempted Second Degree Murder charge. The defendant, Mr. Washington, was charged and tried with two counts in a single trial. At the conclusion of that first trial, Mr. Washington was acquitted of Second Degree Murder based on his defense of self-defense. However, Mr. Washington was not acquitted of Attempted Second Degree Murder; in fact, the jury could not reach a decision on the attempt charge. This indicates that though Mr. Washington presented a self-defense defense for both charges, the jury only reached a final determination as to the validity of this defense on one of the charges. Undoubtedly, the jury must have determined Mr. Washington acted in self-defense when it came to the shooting of John Wactor, or else the jury would have returned a guilty verdict — instead he was acquitted. However, the shooting of Carolyn Coleman involved different facts, therefore affecting the jury’s opinion of Mr. Washington’s self-defense claim. If the jury had decided that Mr. Washington acted in self-defense as to both of the victims, then undoubtedly, the jury would have acquitted him on both charges. The jury had already found Mr. Washington’s self-defense claim to be credible as to the victim, John Wactor, making it ever more clear that the jury did not feel the same about the self-defense claim in regards to the shooting of Carolyn Coleman. The record supports the conclusion that the jury, presented with a self-defense 19claim as to both victims, only found the defense to be credible as to one victim, and not the other. It is clear that the jury considered the self-defense claim as to each victim separate *751 ly and only reached a valid and final judgment as to the Second Degree Murder charge. Therefore, the issue of self-defense as to the Attempted Second Degree Murder of Carolyn Coleman was never actually determined, and Double Jeopardy does not apply to a re-proseeution of that charge.
We agree with these reasons by the trial judge. Accordingly, we affirm her ruling that the retrial of defendant for the attempted second degree murder of Ms. Coleman was not barred by the doctrine of collateral estoppel as embodied in the Double Jeopardy Clause. See State v. Taylor, 115 So.3d at 526 (where the appellate court found, under circumstances similar to the instant case, that the retrial of defendant on one of the two charged counts of armed robbery did not violate the principles of collateral estoppel or double jeopardy).
Based on the foregoing, we find that the arguments raised by defendant in this assigned error are without merit.

SUFFICIENCY OF THE EVIDENCE

In his next assigned error, defendant challenges the sufficiency of the evidence used to convict him.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under the Jackson standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, the reviewing court is required to consider the whole record and determine whether any rational |intrier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
In the present case, defendant does not challenge the essential statutory elements of the offense nor contest that he shot Ms. Coleman, but rather contends that the evidence failed to prove beyond a reasonable doubt that the shooting was not done in self-defense. We find no merit to this argument.
The fact that an offender’s conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. LSA-R.S. 14:18. The use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense. LSA-R.S. 14:19A. When self-defense or the defense of another is claimed by the defendant in a homicide case, the State has the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense or in defense of another. State v. Reed, 11-507 (La.App. 5 Cir. 2/14/12), 88 So.3d 601, 607, writ denied, 12-644 (La.9/14/12), 97 So.3d 1014. However, in non-homicide cases, this Court has stated that the defendant has the burden of proof by a preponderance of the evidence that his actions were in self-defense or in defense of others. State v. Bannister, 11-602 (La.App. 5 Cir. 2/14/12), 88 So.3d 628, 635, writ denied, 12-628 (La.6/15/12), 90 So.3d 1060.
In the present case, the jury was presented with conflicting testimony regarding the circumstances of the shooting. According to Ms. Coleman, after she and defendant had sex, they were getting *752 ready to exit the trailer. The two walked by Mr. Wactor, who was sitting on the sofa, to get to the door. Ms. Coleman was apparently in front of defendant, and as she turned the door knob, she heard a “pop.” She immediately opened the door and ran. until she fell into a ditch. Not Inrealizing that she had been shot, Ms. Coleman went back to the trailer to see what was going on; however, since she saw that defendant’s truck was still there, she did not go inside but rather stood outside the door. According to Ms. Coleman, defendant was positioned behind his truck and started shooting at her. Ms. Coleman pleaded with defendant not to kill her, at which point he returned to his truck and left.
In contrast to Ms. Coleman’s testimony that defendant took aim and shot at her, defendant attempted to portray to the jury that he was in fear for his life and did not intend to shoot Ms. Coleman. According to defendant, as he was leaving the trailer, Mr. Wactor “upped the gun” into his face, and the two then “tussled” for the gun. During the struggle, they both fell onto the sofa, and the gun went off, firing a single shot into Mr. Wactor’s face. Defendant said that he believed that Ms. Coleman had set him up, and he wanted to get out of the trailer fast. In an attempt to leave and in fear for his life, defendant then fired a series of shots out the door, but claimed he was not aiming at anyone in particular. Defendant then ran out the trailer door, got into his truck, and left the area. Defendant admitted that he fired four shots out the door in rapid succession, but claimed that he did not intend to hit Ms. Coleman and had fired the shots blindly out of fear for his life.
By returning the guilty verdict, the jury obviously rejected defendant’s account of the events and found that defendant’s actions were neither reasonable nor apparently necessary. It is the role of the fact-finder to weigh the credibility of witnesses, and a reviewing court will not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State v. Reed, 88 So.3d at 607. The evidence presented at trial clearly supports the jury’s rejection of defendant’s self-defense claim. In particular, we note that there was no evidence presented to suggest that 112Ms. Coleman was committing a forcible offense against defendant. In fact, the evidence at trial clearly established that Ms. Coleman did not have a weapon and was unarmed at the time she was shot. Further, the evidence at trial established that she was outside the trailer at the time she was shot, that she was shot four times, that there had been no arguments between any of the parties during the course of the encounter, and that there was no evidence of a struggle inside the trailer.
As such, viewed in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that defendant was guilty of attempted manslaughter and that defendant did not act in self-defense. The arguments raised by defendant in this assigned error are likewise without merit.

ERROR PATENT REVIEW

We have also reviewed the record for eiTors patent, in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals one error that requires discussion.
In the present case, the State filed a multiple offender bill of information alleging defendant to be a third felony offender. In August of 2013, the court conducted a multiple offender hearing, and *753 after the presentation of the evidence, the court took the matter under advisement until the sentencing. On November 18, 2013, the court conducted a hearing on defendant’s post-trial motions, and during the course of that hearing, the State reminded the court that it had taken the multiple bill hearing under advisement. The trial judge commented that she was not aware that the matter was under advisement and that she “need[ed] some more time on that.” Thereafter, on December 17, 2013, defendant appeared before the hacourt for sentencing. Prior to sentencing defendant, the court commented as follows:
First of all, based on the evidence presented before me, the Court I think has already found that Mr. Washington is a multiple offender with two prior offenses and I have to consider that in my sentencing_Okay. And if it’s not, there’s no minute entry yet I will do that, but I found that he is a multiple offender.
Our review of the sentencing proceedings reflects that the trial court never specified that she found defendant to be a third felony offender. While the trial court did not state the words well known for adjudicating a defendant to be a multiple offender, it is obvious from a reading of the record, including the sentencing transcripts, that the trial court found the State’s evidence sufficient to prove defendant was a third felony offender and that the trial court intended to sentence defendant as such. See State v. Melancon, 01-1656 (La.App. 4 Cir. 8/21/02), 826 So.2d 633, 639, writ denied, 02-2407 (La.3/21/03), 840 So.2d 547, reconsideration denied, 02-2407 (La.5/2/03), 842 So.2d 1090. In particular, we note that the trial court noted defendant’s two prior offenses and informed defendant of the sentencing range for a third felony offender. Thus, the record is clear that defendant was sentenced as a third felony offender.
Turning to defendant’s actual sentence as a third felony offender, we note an error that requires correction. The transcript reflects that the trial court imposed defendant’s fifteen-year sentence “without benefit,” and the minute entry reflects that the sentence was imposed “without benefits of parole, probation, or suspension of sentence.” The trial court was not authorized, pursuant to either LSA-R.S. 15:529.1 or LSA-R.S. 14:27 and 14:31, to restrict defendant’s parole eligibility. Thus, we amend the sentence to allow for the possibility of parole, and in accordance with this amendment, we direct the trial court to correct the uniform 114commitment order from the January 8, 2014 resentencing.[2] We further direct the Clerk of Court for the Fortieth Judicial District to transmit the original of the amended commitment to the officer in charge of the institution to which defendant has been sentenced and to the Department of Corrections’ Legal Department. See State v. Pettus, 11-862 (La.App. 5 Cir. 5/22/12), 96 So.3d 1240, 1243.
For the reasons set forth herein, defendant’s conviction and sentence, as amended, is affirmed. This case is remanded for correction of the uniform commitment order as noted herein.

CONVICTION AND SENTENCE, AS AMENDED, AFFIRMED: MATTER REMANDED WITH INSTRUCTIONS.

. See error patent discussion, infra.

. It appears that the uniform commitment order from January 8, 2014, was inadvertently omitted from the appellate record.