355 So.2d 917 (1978)
STATE of Louisiana
v.
Clarence Edward ADAMS.
No. 60651.
Supreme Court of Louisiana.
March 6, 1978.
*918 Gilmer P. Hingle, DeCelle & Smith, Monroe, for defendant-appellant.
*919 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Steven A. Hansen, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Clarence Edward Adams was charged with armed robbery, in violation of R.S. 14:64. A unanimous jury of twelve found him guilty as charged and defendant was sentenced, as a second offender, to twentyfive years at hard labor without benefit of parole, probation or suspension of sentence.
On appeal defendant relies upon five assignments of error for reversal of his conviction and sentence, having abandoned three assignments.
Assignment of Error No. 1
Defendant contends that the trial court erred in denying his motion to suppress a .22 caliber pistol taken from his person following his arrest. He argues that the burden of proving the constitutionality of the search and seizure was on the State.
We have recently held that, when the constitutionality of a warrantless search is at issue at a motion to suppress hearing, the State must bear the burden of affirmatively showing that it was justified under one of the narrow exceptions to the search warrant requirement. State v. Franklin, 353 So.2d 1315 (La.1978). At hearing on the motion, the trial judge agreed with defendant that the burden of proving the constitutionality of the search and seizure was on the State. However, defendant's motion was denied since it did not set forth specific grounds for the seizure's alleged unconstitutionality; no reasons to support the motion were offered by defendant. No evidence was ever presented at the hearing on the motion; apparently, the witnesses for the State had not arrived in the courtroom.
The record of the trial on the merits reveals that the pistol was seized from defendant's right front pocket in a search incident to a lawful arrest. Therefore, defendant's contention that the pistol should have been suppressed was without merit, and it would serve no purpose to remand for a hearing per State v. Simmons, 328 So.2d 149 (La.1976).
Assignment of Error No. 6
Defendant contends that the trial court erred in allowing the State to proceed with the hearing on the motion to suppress prior to the preliminary examination. He argues that he was put in a disadvantageous position in attempting to prove the unconstitutionality of the search and seizure which uncovered the .22 caliber pistol (see Assignment No. 1) since he was unaware of the facts behind the search and seizure; he intended to rely on disclosure of facts during the course of the preliminary examination in order to suppress the evidence.
Defendant's motion for preliminary examination was filed on April 5, 1977, followed by filing of the motion to suppress and a motion for oyer on April 7. On motion of the State April 21, hearing on all three motions was set for May 5, 1977. Transcript of the May 5 hearing shows that the motion to suppress was taken up first without any defense objection to the order of the proceedings. Thus, in the absence of such an objection, defendant has not properly perfected this issue for appeal. C.Cr.P. 841.
Further, defendant contends the State took contradictory positions when, in the motion to suppress hearing, it denied knowledge of specifics surrounding the search and seizure, and, later, during the preliminary examination, it put on evidence of the search to establish probable cause. Defendant has misinterpreted the arguments made by the State at the motion to suppress hearing. Rather than denying knowledge of facts surrounding the search and seizure, the prosecutor instead argued that defendant's motion, couched merely in general terms, should state its grounds more specifically.
Defendant's contentions are without merit.
*920 Assignment, of Error No. 2
In this assignment defendant contends that three State witnesses, Officers Beckham, Petty and Poulan, were not present in the courtroom when witnesses were sworn and sequestered and that they were not sworn in before testifying.[1] The record makes the usual recitation, "first duly sworn," prior to the testimony of each witness. There is nothing to show that there was no swearing of these witnesses other than defendant's own allegations. In any event, there was no objection made to that fact and thus the issue is not properly before us. C.Cr.P. 841.
This assignment lacks merit.
Assignment of Error No. 4
Defendant assigns error to the trial court denial of an oral motion for a directed verdict of acquittal. This assignment is without merit. With the amendment of C.Cr.P. 778 by La.Acts 1975, No. 525, § 1, the directed verdict in jury trials became unavailable. The trial judge only has such authority in bench trials. See, e. g., State v. Domangue, 350 So.2d 599 (La.1977). Both the offense and the trial occurred after the effective date of the amendment.
Assignment of Error No. 7
Defendant alleges that the trial court erred in ruling him to be a multiple offender, and in enhancing his sentence on that basis, on three grounds.
Defendant contends that due to a discrepancy in the docket numbers between the prosecution for armed robbery and the bill of information charging defendant as a habitual offender, the habitual offender prosecution should have been dismissed.
The proceeding under which defendant was tried for armed robbery was docketed as number 37,667; however, the bill of information charging defendant as a habitual offender was numbered 37,790. During the recidivist hearing on July 6, 1977, defendant objected to the discrepancy in the numbers and the State moved to have the docket number corrected to reflect the proper number as 37,667. On July 8, 1977 an amended bill of information charging defendant as a habitual offender was filed with the corrected number. Defendant now objects to the refiling of the corrected bill, arguing that he should have been acquitted under number 37,790 because the filing of the amended bill would constitute double jeopardy. The deviation in the docket numbers was merely a technical error and did not change the nature of the proceedings into a trial on a new charge. There was only one case and one proceeding.
Defendant contends that the evidence produced at the habitual offender hearing was inadequate to prove he had previously been convicted of a felony.
At the habitual offender hearing, the State offered the following proof to show that defendant had previously been convicted of a felony: (S-1) a fingerprint card from the Ouachita Parish Bureau of Identification made on November 7, 1974 showing that a Clarence Edward Adams was arrested November 6, 1974 on a simple burglary charge, pled guilty to theft, and was sentenced to two years in jail; (S-2) a record of additional arrests from the parish bureau of identification on a Clarence Edward Adams showing a March 4, 1977 arrest for armed robbery, along with fingerprints; (S-3) a jail card from the Ouachita Parish Sheriff's Office on a Clarence Edward Adams dated November 6, 1974 showing an arrest for simple burglary and indicating that that person pled guilty to theft on January 5, 1975 and was sentenced to two years in jail on February 5, 1975; it contained one fingerprint of that individual; (S-4) minutes of court in "State of Louisiana v. Clarence Edward Adams," docket # 36,470, showing that the man pled guilty to theft of $100 but less than $500 on January 15, 1975 and was sentenced to two years *921 in the parish jail on February 5, 1975; and (S-5) minutes of court in "State of Louisiana v. Clarence Edward Adams," docket # 37,667, showing that defendant was found guilty by a jury (the particular charge or what defendant was convicted of is not indicated in the court minutes) and was sentenced to fifteen years at hard labor without benefit of pardon, probation or suspension of sentence on June 27, 1977.
As this court recently stated in City of Monroe v. French, 345 So.2d 23, 24 (La.1977):
"In Louisiana, proof that a person of the same name has been previously convicted does not constitute prima facie evidence that the two persons are the same. State v. Curtis, 338 So.2d 662 (La.1976); State v. Curtis, 319 So.2d 434 (La.1975). The state must additionally offer proof that the accused is the same person as the defendant previously convicted. State v. Curtis, cited above, at 338 So.2d 664. See Also Annotation, 11 A.L.R.2d 870, Section 9 (1950) and Later Case Service (1971)."
A fingerprint expert testified that the fingerprints on S-1, S-2 and S-3 were all made by the same individual but was unable to state that the fingerprints belonged to the defendant. The individual who took the prints was not called to testify and no current fingerprints of the defendant were introduced.
However, by the testimony of Deputy Sheriff Norman Knox, Director for the Ouachita Area Multi-Parish Prison, defendant was identified as the man who committed the prior offense.[2] Knox had been Adams' custodian for two years.
This contention is without merit.
Defendant alleges that even if there is proof that he was previously convicted of a felony, Art. 4, § 5(E)(1) of the Louisiana Constitution of 1974, in particular the automatic pardon provision, disallows the use of that first conviction as a basis for sentencing under the habitual offender statute. Art. 4, § 5(E)(1) provides, in pertinent part:
". . . a first offender never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor."
It is clear that a full complete pardon by the governor precludes the use of a pardoned offense to enhance punishment. State v. Childers, 197 La. 715, 2 So.2d 189 (1941); State v. Lee, 171 La. 744, 132 So. 219 (1931). However, the effect of the automatic pardon provision of Art. 4, § 5(E)(1) on habitual offender adjudications has not yet been determined.[3]
We have previously rejected the argument that Art. 1, § 20 of the 1974 Constitution, which restores full rights of citizenship upon termination of state supervision following conviction of any offense, precludes the State from using the prior conviction to *922 enhance a penalty. State v. Selmon, 343 So.2d 720 (La.1977). We reasoned that since no citizen has the right to prevent the use of convictions to enhance punishment for later offenses, the status of innocence is not "restored" by this constitutional provision.
We recognize that there is a difference in the effect of a "pardon" under Art. 4, § 5(E)(1) and restoration of "full rights of citizenship" under Art. 1, § 20. Art. 1, § 20 restores only the basic rights of citizenship, such as the right to vote, work or hold public office. On the other hand, Art. 4, § 5(E)(1) restores privileges as well as rights, such as the privilege of holding a liquor license. That does not mean, however, that the automatic pardon provision restores the status of innocence to the convict who has merely served out his sentence.
In State v. Lee, supra, we stated that " . . . the pardon restores the original status of the pardoned individual, i. e., a status of innocence of crime." 171 La. at 746, 132 So. at 219. We also quoted with approval a statement made by the United States Supreme Court in Ex Parte Garland, 71 U.S. 333, 380, 18 L.Ed. 366 (1866), that " . . . when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense." 171 La. at 747, 132 So. at 220.
A full pardon granted by the governor has presumably been given the careful consideration of several persons who have taken into account the circumstances surrounding the offense, and particular facts relating to the individual. We do not feel, however, that the delegates to the 1973 Constitutional Convention, in including this provision in the 1974 Constitution (or the legislature before them in proposing a similar amendment to Art. 5, § 10 of the 1921 Constitution, La.Acts 1968, No. 662, § 1), intended that service of one's sentence be the only prerequisite for restoration of the status of innocence. If the legislature had intended that a first offense could not be relied upon for enhancement of punishment, it could easily have said so.[4]
Hence, we hold that the automatic pardon provision of Art. 4, § 5(E)(1) does not preclude consideration of a first felony conviction in adjudicating a person as a habitual offender.
For the reasons assigned, the conviction and sentence of defendant are affirmed.
SUMMERS, J., dissents with the opinion that pardon restores innocence.
NOTES
[1] Defendant's other allegation, that a State witness was allowed to remain in the courtroom at the beginning of trial despite a sequestration order, was not briefed or argued. Therefore, it is deemed to be abandoned.
[2] The trial judge's per curiam opinion indicates that he took judicial notice of the fact that he was the judge who had sentenced the defendant in 1975 on a guilty plea to theft. We have previously held that a judge has the right to take judicial cognizance of a prior proceeding in which he participated as proof that a particular defendant is the same person as previously convicted. State v. Jones, 332 So.2d 461 (La.1976); State v. O'Day, 191 La. 380, 185 So. 290 (1938). Nevertheless, the trial judge's per curiam in the instant case would not alone have been adequate to identify the defendant. In it he stated:

". . . There also was evidence that the judge who had previously sentenced Defendant is the same person as the writer hereof. This was judicially noted and sentence imposed under the Habitual Offender Law."
The remarks indicate the judge took notice of evidence which showed he was the sentencing judge in the prior case, but he did not state that he remembered the defendant from that prosecution. Judicial notice that a judge's name appears on the records of a prior conviction will not satisfy the showing required to sentence an individual as a multiple offender. The defendants in the two proceedings must be identified as the same person.
[3] This same allegation was presented in State v. Williams, 326 So.2d 815 (La.1976), however in holding that Art. 4, § 5(E)(1) had no retroactive effect, and, thus the defendant's 1963 conviction could be used to enhance his penalty under the habitual offender statute, we failed to reach the issue.
[4] The automatic pardon provision of Art. 4, § 5(E)(1) appears to have been adopted without debate. See State of Louisiana, Constitutional Convention of 1973, Verbatim Transcripts, August 3 and 4, 1973, Vol. VII, 25th day at pp. 91-123; 26th day at pp. 2-43. The effect such a section would have on multiple offender law is reflected by the delegates' discussion on adoption of Art. 1, § 20. Section 20, as originally suggested, would have provided restoration of "full rights" upon termination of state and federal supervision following conviction of any offense. The section was amended to allow restoration of "full rights of citizenship" following a debate as to the effect the language would have on multiple offender laws and enhanced punishments to persons who had completed their sentences. The debate showed the committee's intent not to have the fact of conviction erased by service of the sentence. See Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1, 63-64 (1974). As Delegate Chris Roy explained:

". . . a pardon simply restores your rights to vote and to citizenship, but it doesn't change something that is or was. It doesn't change the fact that you're white or you're black or orange or red or whatever you have. It simply restores you to the rights that you had before. You didn't have a right before to commit crime, so you still don't have one in the future to commit it. It has absolutely nothing to do with the multiple offender law and Mr. Richardson, in his comments before our committee, never was able to show anything with respect to that." Id. at 64, n. 340. (Emphasis added).