572 So.2d 1156 (1990)
STATE of Louisiana
v.
Oscar WOODEN.
No. KA 90 0236.
Court of Appeal of Louisiana, First Circuit.
December 18, 1990.
*1158 Donald T. Carmouche, Dist. Atty., Abbott Reeves, Asst. Dist. Atty., Donaldsonville, Alvin Turner, Asst. Dist. Atty., Gonzales, for plaintiff State of La. appellee.
Charles S. Long, Donaldsonville, for defendant Oscar Wooden appellant.
Before EDWARDS, WATKINS and LeBLANC, JJ.
LeBLANC, Judge.
The defendant, Oscar Wooden, was charged by grand jury indictment with first degree murder, in violation of LSA-R.S. 14:30. He pled not guilty and elected trial by jury. Before trial, the indictment was amended to charge second degree murder, a violation of LSA-R.S. 14:30.1. After a jury trial, the defendant was found guilty of the responsive offense of manslaughter, a violation of LSA-R.S. 14:31. He received a sentence of twenty-one years at hard labor. Subsequently, the defendant was adjudicated a second felony habitual offender. The original sentence was vacated; and, pursuant to the habitual offender adjudication, the defendant received a sentence of thirty years at hard labor. The defendant has appealed, alleging two assignments of error, as follows:
1. The trial court erred in imposing an excessive sentence.
2. The evidence was insufficient to support the instant conviction.
On Monday, November 9, 1987, Roosevelt Harris, a seventy-eight year old man, was found dead in his Donaldsonville home. Earlier that day, his relatives had become concerned when they could not reach him by telephone and he would not answer the door. The police were summoned. Ascension Parish Sheriff's Deputy Mike Profida went to the victim's residence accompanied by several relatives. He permitted Larry Hudson, the victim's grandson, to climb in a window, walk around, and open the front door. When Deputy Profida entered the front door, he immediately observed the victim lying on the floor in the hall. The victim was dressed in pajamas and was wearing only one sock. The sheetrock wall next to the victim's body was cracked and appeared to have some blood spattered on it. A plastic tub or bucket was upside down in the middle of the hall beside the victim's body. A later autopsy revealed that the victim's death was caused by blunt trauma to the side of the head. There were also several stab wounds in the victim's neck.
After questioning several relatives, the authorities learned that the defendant had done some carpentry work for the victim during the summer. They became suspicious when the defendant initially denied seeing the victim that weekend and later admitted that he had seen the victim on Sunday evening, November 8th. After further questioning, the defendant confessed to the killing but claimed that it was in self-defense.
In a videotaped confession as well as in his trial testimony, the defendant explained the events that led to Mr. Harris' death. The defendant explained that he and the victim were close friends and often discussed the Bible. On Sunday evening, November 8th, he went to visit the victim and they sat on the living room sofa and talked about the Gospel of John. During this discussion, the defendant mentioned an incident which had resulted in the filing of aggravated assault charges against the victim. The victim had apparently pulled a gun on Anthony Fisher and threatened to kill Fisher if he did not break off a relationship with the victim's granddaughter. The victim allegedly became angry when this incident was mentioned, and an argument erupted. According to the defendant, he was forced to defend himself because the victim was about to retrieve a gun from his bed and shoot the defendant. The defendant picked up a brick (which was used as a doorstop) with his right hand and struck the victim on the left side of the head. At this point, the defendant lost control of himself and struck the victim with the brick at least one more time, although the victim had already staggered to the floor *1159 as a result of the initial blow. The defendant then grabbed a butter knife and stabbed the victim in the neck. When the defendant regained his composure, he knelt down and prayed for forgiveness. He then took the brick, knife, and the victim's gun and wallet, climbed through a window, and fled. The defendant took approximately $50.00 cash from the victim's wallet and placed the money in Cornbread's [Emanuel Spurlock's] bathroom closet. The defendant disposed of the wallet, gun, brick, and knife in four different locations. After the defendant confessed, the authorities were able to recover the wallet, the money, and the brick, but the knife and the gun were never found.
At the trial, the defendant's videotaped confession (State Exhibit Seven) was introduced into evidence. The State suggested that the defendant broke into the victim's home and was lying in wait for him. When the victim returned home Sunday evening, the defendant killed him and robbed him of the money in his wallet and his gun. The State introduced into evidence $68.00 cash which was recovered from the bathroom closet of Emanuel Spurlock's residence. Spurlock denied any knowledge of the money and explained that the defendant occasionally stayed at his residence.
The defense presented evidence that the victim owned several guns and was not hesitant to use them. Anthony Fisher testified about the incident wherein the victim produced a gun and threatened to kill him if he did not break off a relationship with the victim's granddaughter. In fact, as a result of this incident, the victim was awaiting trial on an aggravated assault charge when he was killed. Another defense witness, Hazel Sterling, testified that, while evicting her from a rent house which he owned, the victim pulled a gun on her and threatened to shoot her if she returned. The defense also presented evidence that, on two separate occasions, the victim discharged a firearm in the city limits. Once, the victim did so to scare some children who were playing basketball and accidentally hit the victim's fence with the ball. On the other occasion, the victim fired a gun when he was allegedly attacked by several dogs. The defendant also testified, claiming that he was forced to kill the victim in self-defense. However, he gave a rather confusing explanation of his motive for taking the victim's wallet. The defendant testified that there was no money in the wallet. He stated that the victim never kept money in his wallet; and, therefore, he took the wallet in order to keep the authorities from concluding that the victim was killed for the money in his wallet. The defendant explained that the money found in Mr. Spurlock's bathroom closet was his own and was the remainder of a previous paycheck.

ASSIGNMENT OF ERROR NO. TWO:
In this assignment of error, the defendant contends that the evidence was insufficient to support his conviction of manslaughter. Initially, we note that, in order to challenge this conviction on the basis of insufficiency of the evidence, the defendant should have proceeded by way of a motion for post-verdict judgment of acquittal. See La.C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error. See State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, *1160 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988).
In a homicide case, when self-defense is raised as an issue by the defendant, the State has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. Thus, the issue in this case is whether a rational factfinder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant did not kill the victim in self-defense. State v. Spears, 504 So.2d 974, 978 (La.App. 1st Cir.), writ denied, 507 So.2d 225 (La.1987).
LSA-R.S. 14:20 provides, in pertinent part:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; ...
The fact that the defendant killed the victim is not in doubt. The only issue is whether or not the defendant acted in self-defense. There were no witnesses (other than the defendant) to this homicide. Thus, the only evidence presented to establish what actually happened was the physical and medical evidence and the testimony and videotaped statement of the defendant.
Even assuming that the victim was initially going to get his gun, once the defendant struck the victim in the head with the brick, there was no further danger that the victim would retrieve the gun and shoot the defendant. Yet, after the initial blow, the defendant struck the victim in the head with the brick at least one more time. Then, he found a butter knife and stabbed the victim in the neck several times. The defendant could only explain his actions by stating that he lost control. Nevertheless, the continued infliction of injuries upon the victim, who was rendered helpless by the initial blow, is inconsistent with a claim of self-defense. Furthermore, although the defendant testified that he struck the victim to prevent him from retrieving his gun (which was on the bed), the victim's body was found in the hall.
The manslaughter verdict returned in this case indicates that the jury rejected the defendant's claim of justifiable homicide. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir. 1984). Furthermore, when a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La.1984).
After a careful review of the evidence, we find that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded that the State proved beyond a reasonable doubt that the defendant did not kill the victim in self-defense. See State v. Garcia, 483 So.2d 953 (La.1986).
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. ONE:
In this assignment of error, the defendant contends that the trial court erred in imposing an excessive sentence.
The Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. See, La.C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Chaisson, 507 So.2d 248, 250 (La. App. 1st Cir.1987). In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1st Cir.1988).
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has great discretion in imposing a sentence within the statutory limits; and such a *1161 sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Garner, 532 So.2d 429, 434 (La.App. 1st Cir.1988).
At the original sentencing hearing, the trial court provided extensive reasons for imposing the maximum sentence of twenty-one years at hard labor. The trial court reviewed the presentence investigation, which indicated that the defendant was on probation for a simple burglary conviction when he committed the instant offense. The defendant also had at least one misdemeanor conviction and several felony and misdemeanor arrests. The trial court considered the defendant's background, education, vocational training, military experience, and mental health problems. The trial court found that, if placed on probation, the defendant would probably commit further crimes. The trial court concluded that the defendant was in need of correctional treatment and stated that any lesser sentence would deprecate the seriousness of the offense. While noting that the defendant was convicted of manslaughter, the trial court concluded that the evidence would have supported a verdict of guilty of second degree murder. Upon resentencing, the trial court referred to the original reasons for sentencing and considered the defendant's adjudication as a second felony habitual offender. The trial court also noted, as a mitigating factor, the defendant's additional educational achievements while in prison.
In his brief to this Court, the defendant lists several mitigating factors and concludes that the trial court erred in failing to accord any weight to these factors. The defendant also contends that the trial court was unduly "concerned that the [j]ury did not return a [s]econd [d]egree murder verdict...." We disagree. Each of the mitigating factors listed by the defendant was specifically mentioned in the trial court's sentencing reasons. Furthermore, the fact that the evidence in this case might have supported a verdict of second degree murder was an appropriate sentencing consideration. See State v. Heath, 447 So.2d 570, 577 (La.App. 1st Cir.), writ denied, 448 So.2d 1302 (La.1984). In our view, the trial court thoroughly complied with the Article 894.1 guidelines.
Finally, the defendant contends that the trial court erred in imposing the original sentence of twenty-one years at hard labor (the maximum sentence for a manslaughter conviction), and apparently contends that the enhanced sentence also was excessive due to the fact that the original sentence was excessive. We disagree. For his conviction of manslaughter and subsequent adjudication as a second felony habitual offender, the defendant was exposed to a minimum sentence of seven years at hard labor and a maximum sentence of forty-two years at hard labor. See LSA-R.S. 14:31; LSA-R.S. 15:529.1 A(1).[1] The defendant received a sentence of thirty years at hard labor. Considering the circumstances of this offense, the defendant's habitual offender status, and the reasons for sentencing given by the trial court, we conclude that the instant sentence is not excessive.
This assignment of error is meritless.
THE CONVICTION AND SENTENCE IMPOSED BY THE TRIAL COURT ARE AFFIRMED.
NOTES
[1] LSA-R.S. 15:529.1 A(1) subsequently was amended by Section 1 of Act 482 of 1989.