NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 12-788

STATE OF LOUISIANA

VERSUS

ERNEST D'WAYNE DERRYBERRY

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 211195
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JOHN E. CONERY
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Phyllis M. Keaty, and John E. Conery,
Judges.

HABITUAL OFFENDER SENTENCE AFFIRMED.

James C. Downs
District Attorney - 9th JDC
701 Murray Street
Alexandria, Louisiana 71301
(318) 473-6650
COUNSEL FOR PLAINTIFF/APPELLEE:
        State of Louisiana
Thomas Rockwell Willson
Assistant District Attorney
Post Office Drawer 1630
Alexandria, Louisiana 71309
(318) 442-8658

**COUNSEL FOR PLAINTIFF/APPELLEE:**
     State of Louisiana

**Ernest D'Wayne Derryberry**
**Avoyelles Correctional Center C2D2**
**1630 Prison Road**
**Cottonport, Louisiana  71327**
**In Proper Person**

**CONERY, Judge,**

In this criminal case, Defendant, Ernest D'Wayne Derryberry, appeals his habitual offender adjudication and sentence. He alleges the trial court lost and/or waived jurisdiction to resentence him, the State vindictively filed an amended Habitual Offender Bill of Information upon which the court illegally sentenced Defendant as a third felony offender, and the sentence imposed by the trial court was excessive. For the following reasons, we affirm the trial court's jurisdiction to sentence Defendant as a third felony offender, and affirm his sentence of forty-two years imprisonment at hard labor.

## PROCEDURAL HISTORY AND FACTS

In 1987, Defendant, Ernest D'Wayne Derryberry, who had been charged with second degree murder, pled guilty to manslaughter, a violation of La.R.S. 14:31, pursuant to a plea agreement, and was subsequently sentenced to forty-two years imprisonment at hard labor. This court vacated the sentence on November 3, 2006, and remanded for further proceedings in *State v. Derryberry*, an unpublished writ bearing docket number 06-1063 (La.App. 3 Cir. 11/3/06).[1] The basis of this court's decision was that at the time the crime was committed the maximum sentence for manslaughter was twenty-one years. Defendant was sentenced as a multiple offender. This court found that Defendant had not been properly advised of his rights as a habitual offender, and that no habitual offender adjudication was ever held.

On March 12, 2007, after remand, the State filed an amended habitual offender bill alleging that Defendant was a fourth felony offender. On May 6, 2011, Defendant was adjudicated a third felony offender via written order based on pleadings filed by Defendant and the State. He was sentenced on December 1, 2011, to forty-two years imprisonment at hard labor with credit for time served.

---

[1] Hereinafter this case will be referred to as *Derryberry I*.

Defendant filed a Motion to Reconsider the Sentence on December 27, 2011. The motion was denied on January 9, 2012. Defendant now appeals the habitual offender adjudication and the sentence. For reasons which follow, this court affirms Defendant's habitual offender adjudication and sentence.

Defendant was originally charged with second degree murder of his step-brother, Errol Randy Fossett, outside a bus station in Pineville, Louisiana, on November 18, 1984, the day after Defendant killed his step-father in Texas. Defendant was taken into custody on November 19, 1984, and charged with second degree murder on January 3, 1985. Defendant was adjudicated incapable of proceeding to trial following a sanity commission hearing, and, on August 8, 1985, he was sent to the East Feliciana Forensic Facility. He was returned to Rapides Parish in June 1986 and was deemed able to proceed to trial.

On February 9, 1987, Defendant pled guilty to the reduced charge of manslaughter pursuant to a plea agreement, during which Defendant was informed that the State intended to file a habitual offender bill. On March 17, 1987, the State filed a habitual offender bill alleging Defendant was a second felony offender. The bill alleged that Defendant was convicted on December 8, 1980, of possession of marijuana with the intent to distribute. No habitual offender hearing was ever held.

On May 4, 1987, Defendant was then erroneously sentenced on the conviction of manslaughter to forty-two years imprisonment at hard labor. At the time of the offense in 1984, manslaughter was punishable by no more than twenty-one years imprisonment.

In August 2006, Defendant filed a writ application alleging the habitual offender adjudication was defective; therefore, the sentence was illegal. On November 3, 2006, in *Derryberry I*, this court vacated the sentence and remanded the matter to the trial court, as follows:

**WRIT GRANTED AND MADE PEREMPTORY:** The record before this court does not indicate the trial court adjudicated Relator a habitual offender, that a habitual offender hearing was held, that the State presented any evidence to prove the allegation in habitual offender bill, or that Relator admitted to being a habitual offender. Consequently, the sentence imposed by the trial court was well beyond that authorized by La.R.S. 14:31 and is illegal. See La.Code Crim.P. art. 882, La.R.S. 14:31, *State v. Nguyen,* 04-321 (La.App. 5 Cir. 9/28/04), 888 So.2d 900, *writ denied*, 05-220 (La. 4/29/05), 901 So.2d 1064. Accordingly, Relator's sentence is vacated[,] and the matter is remanded to the trial court for further proceedings consistent with this opinion.

On March 12, 2007, the State filed an amended habitual offender bill which alleged Defendant was a fourth felony offender and asserted that he was subject to life imprisonment pursuant to La.R.S. 15:529.1.

On December 1, 2011, five years and one month after the amended habitual offender bill of information was filed, Defendant was sentenced to forty-two years imprisonment at hard labor for the crime of manslaughter as a third felony offender.

## ASSIGNMENTS OF ERROR

There are two issues before this court. The first issue is based on the fact that Defendant completed the underlying sentence of twenty-one years imprisonment prior to completion of the multiple offender proceeding. Accordingly, Defendant asserts he was adversely affected by unreasonable delays in his multiple bill hearing and, therefore, he is entitled to have the habitual offender bill quashed.

The second issue concerns the habitual offender sentence the trial court imposed on December 1, 2011. Defendant filed a Motion to Reconsider the Sentence on December 27, 2011, asserting that the trial court did not have jurisdiction to adjudicate him a third felony offender because of the speedy trial violations; alternatively, the sentence was excessive under the circumstances of his case. The trial court denied the motion stating that the motion was untimely filed and that the trial court did not have the authority to reconsider or modify the sentence once the sentence was executed.

**ASSIGNMENT OF ERROR ONE**

The underlying offense to which Defendant pled guilty was committed on November 18, 1984. Defendant was taken into custody on November 19, 1984. Defendant was in continuous custody until the time he pled guilty on February 9, 1987. At the time the offense was committed, La.Code Crim.P. art. 880 provided "[t]he court, when it imposes sentence, shall give a defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence." While the trial court did not order credit for time served at the sentencing hearing, this provision is now to be applied automatically and retroactively. *State v. Hebert*, 97-1742 (La.App. 3 Cir. 6/3/98), 716 So.2d 63, *writ denied,* 98-1813 (La. 11/13/98), 730 So.2d 455, *cert. denied*, 529 U.S. 1072, 120 S.Ct. 1685 (2000); *State v. Johnson*, 98-1407 (La.App. 1 Cir. 4/1/99), 734 So.2d 800, *writ denied,* 99-1386 (La. 10/1/99), 748 So.2d 439. Thus, Defendant finished the maximum twenty-one year sentence for the underlying offense in November 2005. The writ which resulted in this court vacating the illegal forty-two year sentence was filed in June 2006. *Derryberry I.*

Prior to the supreme court's decision in *State v. Muhammad*, 03-2991 (La. 5/25/04), 875 So.2d 45, the rule was that the adjudication and sentencing of a defendant as a multiple offender had to be completed prior to defendant's completion of the underlying sentence. *State ex rel. Williams v. Henderson*, 289 So.2d 74 (La.1974), and *State ex rel. Glynn v. Blackburn*, 485 So.2d 926 (La.1986). In *Muhammad,* the above "bright line" rule was modified. The defendant in *Muhammad* had served the underlying sentence before the final habitual offender bill was filed. The original bill had been filed on the day of sentencing. However, due to certain events, including two appeals by the defendant in which the court of appeal vacated the multiple offender adjudications, the defendant completed the underlying sentence prior to completion of the multiple offender proceedings. The supreme court discussed

4

whether the adjudication and resentencing of a defendant as a multiple offender must be completed prior to the defendant's completion of the underlying sentence, found no prescriptive period was contained within La.R.S. 15:529.1, and stated as follows:

> In order to resolve this issue, we begin by examining the language of the statute that provides for enhancement of penalty for habitual offenders. La.R.S. 15:529.1.
>
> The language of the statute pertinent to this case is found in Section (D)(1)(a) which provides: "*If, at any time, either after conviction or sentence*, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state . . . the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction or adjudication of delinquency." The same section further provides: "Whereupon *the court* in which the subsequent conviction was had *shall cause the person, whether confined in prison or otherwise,* to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true." (Emphasis provided.)
>
> Review of the statute reveals the absence of a prescriptive time period for completion of the habitual offender proceeding. Wording of the statute indicates the legislature contemplated the multiple offender proceeding could be brought against an individual who was not incarcerated.

*Muhammad*, 875 So.2d at 50-52 (footnote omitted). The court further stated:

> As a general matter, the Supreme Court has set forth four factors for courts to consider in determining whether a defendant's right to a speedy trial has been violated. Those factors are the length of the delay, the reasons for the delay, the Defendant's assertion of his right to speedy trial, and the prejudice to the Defendant resulting from the delay. *Barker v. Wingo,* 407 U.S. 514, 531-32, 92 S.Ct. 2182, 2192-93, 33 L.Ed.2d 101 (1972). This court adopted the *Barker* factors in *State v. Reaves*, 376 So.2d 136 (La.1979). While these factors are neither definitive nor dispositive in the context of a habitual offender proceeding, they are instructive.
>
> We acknowledge that the Sixth Amendment, by analogy, may superimpose a limitation; however, a case by case evaluation is warranted to determine whether the proceeding has been promptly concluded. *See State ex rel. Williams v. Henderson*, 289 So.2d at 77. Similarly, relevant speedy trial considerations may be used to assist extraordinarily long. Abusive or vindictive delay should not be tolerated. The longer the State delays filing and is responsible for postponing

completion of the habitual offender proceeding, the more likely it is that the delay will be charged against the State.

*Id.* at 55.

The court in *Muhammad* found there were "two concepts at issue—the timely *filing* of a multiple offender bill of information and the timely *hearing or completion* of the proceeding." *Id.* at 56. The court then found there was no reason for the court to "jurisprudentially provide a bright line deadline by which the habitual offender proceeding must be completed." *Id.* at 56.

The first of the four factors cited by the United States Supreme Court in *Barker*, the length of the delay, is referred to as the "triggering mechanism," and if the length of the delay is not "presumptively prejudicial," the court need not inquire into the other three factors. *State v. Scott*, 04-1142, p. 12 (La.App. 4 Cir. 7/27/05), 913 So.2d 843, 851, *writ denied,* 06-822 (La. 10/13/06), 939 So.2d 356.

Initially, the State argues that in 1987 it had agreed to reduce the second degree murder charge to manslaughter in exchange for Defendant's agreement that he would be sentenced as a habitual offender. The State further asserted "the sentence imposed was a 'bargained for' sentence. It was merely incorrectly imposed."

On February 9, 1987, at the guilty plea hearing, the following conversation took place between the trial court and Defendant:

BY THE COURT: Mr. Derryberry, you understand you're charged with second degree murder, do you not?

BY MR. DERRYBERRY: Yes, sir.

BY THE COURT: You understand that the District Attorney's office is going to amend that charge to manslaughter. Do you understand that?

BY MR. DERRYBERRY: Yes, sir.

BY THE COURT: And for them amending that charge to manslaughter you are going to enter a plea of guilty to that charge. Do you understand that?
BY MR. DERRYBERRY: Yes, sir.

6

BY THE COURT: And that further they're going to then multiple bill you. Do you understand that?

BY MR. DERRYBERRY: Yes, sir.

BY THE COURT: Okay. Do you understand all these proceedings and you have no objections to the District Attorney's officer reducing these charges to manslaughter and then subsequently multiple billing you?

BY MR. DERRYBERRY: No, sir.

. . . .

BY THE COURT: Do you understand the nature of the charge against you?

BY MR. DERRYBERRY: Yes, sir.

BY THE COURT: Do you understand that as punishment for this offense you could be sentenced to the Louisiana State Penitentiary for as much as twenty-one years?

BY MR. DERRYBERRY: Yes, sir.

BY THE COURT: And on the subsequent multiple offender billing that you could receive up to forty-two additional years. Do you understand that?

BY MR. DERRYBERRY: NO RESPONSE AUDIBLE

BY THE COURT: Do you, sir?

BY MR. DERRYBERRY: I do now.

BY THE COURT: You didn't before. . .

BY MR. DERRYBERRY: Yes, sir.

BY THE COURT: But you do now?

BY MR. HUMPHRIES: [Prosecutor] Up to forty-two years.

BY THE COURT: Up to forty-two years. You could receive anywhere from one-third of the twenty-one which is seven . . .

BY MR. DERRYBERRY: Yes, sir.

BY THE COURT: . . . up to twice the twenty-one which is forty-two. Do you understand that?
BY MR. DERRYBERRY: Yes, sir.

It is obvious from this conversation that Defendant was aware that the State intended to multi-bill him; he agreed that he was a multiple offender and that he could receive up to a forty-two year sentence at hard labor. Following the *Boykinization*, the trial court ordered a presentence investigation report and set sentencing for a later date. *See Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969).

In *State v. Grimes*, 01-576 (La.App. 4 Cir. 5/2/01), 786 So.2d 876, the State filed a habitual offender bill on the day of sentencing on the underlying conviction. At the time of the habitual offender hearing, the defendant had served twenty-three months of a three year sentence and was out of custody on parole. He filed a motion to quash the habitual offender bill, asserting that the hearing was reset eighteen times over a sixteen-month period. The defendant argued that the delay was unreasonable in his case. The fourth circuit concluded that the sixteen month delay between the filing of the bill of information and the hearing was not unreasonable even though there were eighteen continuances. The record indicated that on only one occasion did the trial court continue the hearing at the state's request. The remaining continuances were unexplained in the record, and the defendant failed to show how he was prejudiced by the delay.

In the current case, it was twenty years from the date the original habitual offender bill was filed in March 1987 to the amended habitual offender bill filed in March 2007. It was a little more than twenty-five years from the date the original bill was filed to the date Defendant was finally adjudicated a habitual offender in May 2011. It was five years and one month from the time this court vacated Defendant's habitual offender sentence in November 2006 until Defendant was sentenced in December 2011. Finally, as noted above, while he has remained incarcerated, Defendant completed the maximum sentence of twenty-one years for the conviction

of manslaughter in November 2005, a year prior to this court vacating the habitual offender sentence.

The length of the delay in this case is such that it requires review of the remaining speedy trial factors: the reasonableness of the delays, Defendant's assertions to his right to a speedy trial, and the prejudice that resulted from the delay. *See State v. Van Dyke*, 03-437 (La.App. 3 Cir. 10/1/03), 856 So.2d 187, *writ denied,* 03-2777 (La. 2/13/04), 867 So.2d 689.

On March 17, 1987, the State filed a habitual offender bill which alleged Defendant was a second felony offender. The bill listed as the predicate offense a 1980 Louisiana conviction for possession of marijuana with intent to distribute (which, as later determined, was an incorrect designation). Defendant was given five years at hard labor, suspended, and five years active probation. There is nothing in the record to indicate that Defendant's probation for the 1980 felony was revoked due to the manslaughter charge in 1984.

At the May 4, 1987 sentencing hearing, the trial court offered the State and defense counsel five minutes to review the presentence investigation report, then proceeded directly to sentence Defendant, as follows:

> Okay, as I previously noted you pled guilty to manslaughter, one count, before me on February the 9th of this year. I've received an extensive Pre-sentence Investigation and Report prepared by the Division of Probation & Parole, the Louisiana Department of Corrections and, of course, it reflects a history of criminal acts committed by you, most of them being violent crimes and of a violent nature. In addition to that, the District Attorney's office has seen fit to multiple bill you under the provision of Title 15, Section 529.1. What this means is had they not done this the maximum I could have sentenced you to was twenty-one (21) years in the Louisiana Department of Corrections with no minimum sentence to be imposed. I[t] could be anywhere from a year which I would have to impose since you have a prior felony conviction . . . two prior felony convictions up to twenty-one (21) years. It now increases it to a minimum of seven (7) years to forty-two (42) years that I can impose upon you.

Due to your previous history of criminal activities, all of which . . . all of which are of a violent nature, I feel that I have no alternative rather than to impose upon you the maximum that I could as provided by law.

It is therefore the sentence of the court that you be committed to the custody of the Louisiana Department of Corrections to serve at hard labor for a period of FORTY-TWO (42) YEARS[.]

As noted above, the record is clear that Defendant was aware the State was going to file a multiple offender bill, and the multiple offender bill had been filed. The record shows that Defendant had never been arraigned on the multiple bill and he had not been given the opportunity to challenge the alleged predicate offense or offenses. He had not been advised of the right to remain silent, or advised that the State had to prove its allegations. Nor does the record show that Defendant waived a habitual offender hearing. Therefore, as determined by *Muhammad,* 875 So.2d 45, while the initial filing of the habitual offender bill was timely, the questions then before this court are whether Defendant's right to a speedy trial was violated when he was not adjudicated a habitual offender until December 2011 and whether the trial court erred when it allowed the State to add a second predicate offense to the bill more than twenty years after the original habitual offender bill was filed.

*Defendant's Right to Speedy Trial*

In *State v. Toney,* 02-992, pp. 4-5 (La. 4/9/03), 842 So.2d 1083, 1086, as discussed above in *Muhammad*, 875 So.2d 45, the supreme court discussed the issue of whether a seventeen-month delay between the filing of the multiple bill and the holding of a hearing on the issue required the bill to be quashed and stated:

This court has not previously expressly considered that issue. However, given the fact that the rule adopted in [*State v.*] *McQueen* [308 So.2d 752 (La.1975)] and [*State v.*] *Broussard*[, 416 So.2d 109 (La.1982)] is based on the requirement of La.Code Crim.P. art. 874 that sentence be imposed without unreasonable delay, we find that the hearing on a multiple bill must be held within a reasonable time, under the facts and circumstances of the specific case, after the filing of the bill.

In *Toney*, to determine the reasonableness of the delay, the supreme court looked at who---the State or the defendant---and what caused the delays. In this case, the State argues in brief that "[Defendant] fails to acknowledge that original sentence was presumptively valid until it was declared invalid nineteen years after being imposed. The State has to assume the sentence imposed is valid until such time as a court decides otherwise. Therefore, the State was not the cause of the delay and it should not be attributed to the State." This court agrees. The trial judge obviously thought that Defendant had already been adjudicated as an habitual offender at the time he imposed the original sentence. Defendant was not prejudiced, as his record was discussed at length at the original sentencing, and his sentence was based in part on the presentence investigation report. Also, at the time of his original plea, Defendant was specifically advised that he would be sentenced as a habitual offender up to forty-two years at hard labor.

The State correctly claims that the enhanced sentence of forty-two years was a part of the plea agreement and was only imposed incorrectly. Defendant was aware he was going to be multiple billed and knew from the beginning that he was going to be subjected to a habitual offender sentence. At the time of the initial sentencing, there were only two offenses, the underlying manslaughter conviction and the predicate offense of possession of marijuana with intent to distribute conviction. Defendant challenged the latter offense as an incorrect designation immediately after he began the sentence. Defendant noted in a supplemental brief:

> The original sentencing Judge based his sentence on a faulty pre-sentence report and the State's filing of a misleading Multiple Offender Bill. The original sentence was based upon two (2) prior violent convictions. Defendant was never convicted of "Possession of Marijuana with Intent to Distribute," a violent offense as charged in the original Multiple Bill and Pre-sentence investigation report. The only previous conviction in defendant's record is for "Possession of Marijuana with intent to Produce," a non-violent act.

This error was eventually acknowledged by the trial court in its Written Reasons on Objection to Habitual Offender Bill of Information.

In *State v. Langlois,* 96-0084 (La.App. 4 Cir. 5/21/97), 695 So.2d 540, *writ granted in part and remanded*, 97-1491 (La. 11/14/97), 703 So. 2d 1281, the fourth circuit did not find that the trial court erred when it denied the defendant's motion to quash the habitual offender bill due to unreasonable delay of fifteen to seventeen months between the filing of the bill until the defendant was adjudicated a fourth felony offender due to the "unique and distinctive procedural history" of the case. *Id.* at 544. In *Langlois*, the defendant, who had been convicted of attempted manslaughter, was also connected to a first degree murder case, and the trial judge's daughter was friends with the deceased victim. Therefore, the matter had to be transferred to a different division, and there was some confusion as to in which division the matter belonged.

In *State v. Zachary*, 08-634 (La. 11/21/08), 995 So.2d 631, the supreme court did not find a delay of five years after the first hearing and seven years after filing the bill of information unreasonable because of the unique and distinctive procedural history of the case and denied the defendant's application for review.

In *State v. Davis*, 11-137 (La.App. 3 Cir. 5/31/12), 94 So.3d 902, the defendant was convicted of simple burglary, on March 23, 1994, and, on the same day, the State filed a habitual offender bill of information. So, from the day of his conviction defendant had notice that he was in jeopardy of an enhanced penalty if the State proved his underlying felonies. One year later, the defendant was sentenced to twelve years at hard labor on the simple burglary charge. One year after that, he was adjudicated a fourth felony offender and the trial court imposed an enhanced sentence of ninety years at hard labor. In 1997, the fifth circuit affirmed defendant's habitual offender adjudication, but remanded for resentencing only.

12

On October 18, 2010, thirteen years after the *Davis* court vacated defendant's original enhanced sentence and remanded for resentencing, and approximately sixteen and one half years after the filing of the original multiple offender bill, the trial court vacated defendant's underlying twelve year sentence and imposed an enhanced sentence of thirty-five years. The defendant contested the amount of time that elapsed before the court resentenced him, and, on November 19, 2010, the trial court denied the defendant relief. *Id.*

The fifth circuit affirmed on May 31, 2012, and denied rehearing, finding that from the date of his conviction, the defendant in *Davis* knew the State sought to prove he had previous felonies to support an enhanced penalty. From the time he was adjudicated in 1997 as a fourth felony offender, the defendant knew he would be sentenced as a fourth felony offender. Additionally, the circuit court found the habitual offender resentencing some thirteen years later did not violate the defendant's right to speedy trial. The record indicated that the delay was principally caused by lack of movement of the case in the district court and not by any abuse by the State.

In this case, Defendant's right to speedy trial was not violated when he was not adjudicated a habitual offender until December 2011. Defendant knew from the day of his plea in 1987 that he was subject to the enhanced penalty and that the reduction of his original charge from second degree murder to manslaughter was based on the State's habitual offender bill of information which provided for the enhanced penalty and the sentence imposed of up to forty-two years imprisonment at hard labor.

### *Amendment of the Original Habitual Offender Bill Of Information*

Defendant argues further in brief that it was error to allow the State to add a 1972 Texas conviction for robbery by assault to the habitual offender proceeding, as that charge could not be used in an enhancement proceeding. He argues that the Texas

conviction was eventually set aside and dismissed; therefore, the conviction could not be used as a predicate.

In the multiple offender bill of information, filed in March 2007, the State alleged that Defendant was a fourth felony offender in that he was convicted "in the 177th Judicial District Court in and for Harris County, Texas, Docket Number 164,596, of the offense of Robbery by Assault, a felony."[2] On February 11, 1972, Defendant pled guilty to the charge. He was sentenced to seven years imprisonment, suspended, and placed on probation. On November 11, 1974, the Texas trial court issued the following Order:

> It appears to the Court, after considering the report made by the defendant's probation officer, and other matters and evidence that the defendant has satisfactorily fulfilled the conditions of probation during a period of over one-third of the original probationary period to which he was sentenced. Therefore, the period of probation is terminated and
>
> It is the order of the Court that the defendant be and he is hereby permitted to withdraw his plea of guilty, the indictment against defendant be and the same is hereby dismissed and the Judgment of Conviction be and the same is thereby set aside as provided by law.

In its written ruling, finding Defendant a third felony offender, the trial court noted that the above "[o]rder issued by the Texas court is not a full, complete pardon as it was *not* issued by the Governor of Texas." The trial court cited *State v. Adams*, 355 So.2d 917 (La.1978) as its authority. The fifth circuit in *State v. Lemoine*, 05-265 (La.App. 5 Cir. 11/29/05), 919 So.2d 727, *writ denied*, 05-2564 (La. 9/15/06), 936 So.2d 1254, also relied on *Adams* when it found that the defendant in that case could not argue that the Louisiana Legislature did not specifically authorize the use of a pardoned first offense conviction to enhance a subsequent felony conviction. The fifth circuit noted:

---

[2]The State also alleged that Defendant "was found guilty in the 292nd Judicial District Court in and for Dallas County, Texas, Docket Number F846053, of the offense of First Degree Murder[.]" That case involved the murder of his stepfather occurring the day before the murder of his stepbrother in this case. However, the trial court rejected the conviction as a predicate since the conviction occurred after Defendant was convicted of the underlying offense and sentenced.

In [*Adams*], the defendant challenged his enhanced sentence as a second felony offender. Among those challenges, the defendant argued that his first felony conviction could not serve as a predicate in the multiple offender proceeding because he had received an automatic first offender pardon on his first felony conviction. The supreme court rejected that argument and ruled that a distinction existed between the governor's pardon and the automatic first offender pardon. According to *Adams*, "It is clear that a full complete pardon by the governor precludes use of a pardoned offense to enhance punishment." 355 So.2d at 921. The supreme court then examined the automatic first offender pardon and found that it restored the basic rights of citizenship under Article I, Section 20 of the Louisiana Constitution and restored certain privileges and rights under Article IV, Section 5(E)(1) of the Louisiana Constitution. The court in *Adams* then concluded, "That does not mean, however, that the automatic pardon provision restores the status of innocence to the convict who has merely served out his sentence." 355 So.2d at 922. According to *Adams*, if the Louisiana Legislature had intended that an automatically pardoned first offense could not be used for enhancement of punishment, it could have easily said so. The Louisiana Supreme Court thus ruled in *Adams* that the automatic first offender pardon did not preclude a first felony conviction from serving as a predicate in a multiple offender proceeding. *Id.*

The law of this state has never recognized the automatic first offender pardon as being a full pardon and restoring the pardoned individual to the status of innocence. To the contrary, the law has consistently distinguished between the full and complete scope of the governor's pardon and the limited scope of the first offender pardon. The automatic first offender pardon restores the basic rights of citizenship without the need to appear before the pardon board. *State v. Adams, supra*; *State v. Lewis,* 366 So.2d 1355, 1357-1358 (La.1978); *State v. Selmon*, 343 So.2d 720, 721-722 (La.1977); *State v. Moore*, 03-16 (La.App. 3 Cir. 5/14/03), 847 So.2d 53, 58-60, *writs denied,* 03-1480 (La.12/12/03), 860 So.2d 1150 and 04-2931 (La.1/21/05), 893 So.2d 55. *See also* La. Atty. Gen. Op. No. 95-293.

*Id.* at 729-30.

Defendant's conviction in Texas appears to have been subject to a similar procedure to the one in Louisiana pursuant to La.Code Crim.P. art. 893, wherein the court defers sentence, subject to a term of probation. If a defendant completes his probation requirements, that defendant's charges are dismissed and he is eligible for a first offender pardon. However, the charge may still be counted in a subsequent habitual offender proceeding. La.Code Crim.P. art. 893(E)(2); *Adams,* 355 So.2d 917.

Thus, it clear that only a full pardon from the governor will preclude a conviction from being used as a predicate offense in a habitual offender proceeding. *Id.* at 922.

Defendant also argues that the trial court erred when it permitted the State to add the 1972 conviction to the habitual offender bill after the State had known about the conviction for many years. The record is not clear as to when the State became aware of the conviction. At the original sentencing hearing, the trial court, without naming the offenses, discussed two prior felony convictions. The State argues it makes little difference whether Defendant is a second felony offender or a third felony offender in that the sentence of forty-two years is the maximum sentence that could have been imposed in either case at the time the offense was committed. This court agrees and finds no prejudice to Defendant.

As noted above, La.R.S. 15:529.1 does not establish a time limitation for multiple offender proceedings, but jurisprudence holds that a multiple offender proceedings must be completed within a reasonable time after the State has learned of a prior felony conviction. This reasoning is based on a defendant's right to a speedy trial and to know the full consequence of the sentence within a reasonable time. *See State v. Anderson,* 01-158 (La.App. 5 Cir. 5/16/01), 788 So.2d 561. In the current case, Defendant was aware he was going to be charged as at least a second felony offender originally, and, even though the trial court did not adjudicate him as such, the trial court noted at the original sentencing hearing that the State had filed a multiple offender bill and that the trial court was sentencing him as a second felony offender.

In this case, we find that Defendant failed to show prejudice due to the extraordinary delay. While he was not originally offered the opportunity to challenge the predicate conviction prior to being given an improperly imposed habitual offender sentence in 1987, he has since admitted that he was the person who was convicted of growing marijuana in 1980, and he further admitted he was the person who committed

the robbery by assault conviction in 1972. He received the same sentence that was the subject of his plea agreement and originally erroneously imposed on May 4, 1987. He is no worse off currently then he was prior to this court vacating the improperly imposed habitual offender sentence in 2006. In short, Defendant can show no prejudice from the delay.

## ASSIGNMENT OF ERROR TWO

On December 1, 2011, Defendant was sentenced to the maximum habitual offender sentence of forty-two years imprisonment, with credit for time served, as a third felony offender pursuant to La.R.S. 15:529.1. On December 27, 2011, he filed a Motion for Reconsideration of Sentence. In the motion to reconsider, he alleged that the trial court did not have jurisdiction to adjudicate him a habitual offender because of speedy trial violations; alternatively, the sentence was excessive under the circumstances of his case. The trial court erroneously denied the motion for the reason it was untimely filed and that the trial court was "divested of jurisdiction to reconsider or modify a felony hard labor sentence once execution of the sentence has begun. See La.Code Crim.P. art. 881(B)(1)."

Defendant was sentenced on December 1, 2011. He filed the motion to reconsider on December 27, 2011. Louisiana Code of Criminal Procedure Article 881.1 provides that "[w]ithin thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence." Accordingly, Defendant's motion was timely filed. The court will now review whether the sentence is excessive as alleged.

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to

acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

In *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183, the fifth circuit noted three factors the appellate court should consider in reviewing a judge's sentencing discretion. They are: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. Finally, in general, maximum sentences are reserved for cases involving the most serious violations of an offense charged and the worst type of offender. *State v. Stacker*, 02-768 (La.App. 5 Cir. 12/30/02), 836 So.2d 601, *writ denied*, 03-411 (La. 10/10/03), 855 So.2d 327.

At the sentencing hearing, Defendant read into the record a statement purportedly written by a Doctor Strickland at the time of the sanity commission determination of Defendant's competency. The statement indicated that in the doctor's opinion Defendant was not competent when he committed the offense of murdering his step-brother. Defendant also presented four witnesses, Lieutenant Colonel Joel Steward; Warden Tim Delaney; Colonel Randy Ducote; and Colonel Russell Bordelon. Each witness was an employee of Angola prison where Defendant has been housed since 1987. They testified that they were involved with security at the prison and interacted with Defendant for various reasons for several years. They

stated that Defendant has been a model prisoner and that they would not be concerned if Defendant was let out of prison.

Margaret McClure, a deputy with the Caddo Parish Sheriff's Office, made a victim impact statement. She stated that she knew Defendant because his step-brother's wife's families were friends. She stated that at the time of the killing of his step-brother, Defendant had threatened her and her family because they were police officers. She said that even after Defendant was charged with the murder, he continued to threaten her. Finally, the victim's wife, Denise Fossett, made a victim impact statement on her own behalf and on behalf of her young daughter when Defendant shot and killed the victim.

After argument and discussion, the trial court noted that he had reviewed the presentence investigation report. The trial court noted that Defendant had also been convicted of murdering his step-father the day prior to him shooting and killing his step-brother. Defendant pled guilty to the murder of his step-father on November 17, 1984, and was sentenced by the 292th District Court of Dallas County, Texas, on October 6, 1988, to five years imprisonment, to be served concurrently with the Louisiana conviction.

The trial court then concluded:

Under a review of the sentencing guidelines set forth in the Code of Criminal Procedure Article 894.1 this Court does find that based upon Mr. Derryberry's conduct, his, Mr. Derryberry's action, his conduct manifested delibera [sic], deliberate cruelty to the victim in the commission of the murder. The Court further finds that Mr. Derryberry used his status as stepbrother to facilitate commission of the crime. In addition to the emotional loss, the Fossett family lost a significant economic force in their family, and the Court finds that the crime resulted in significant economic loss to the Fossett family. Mr. Derryberry used a gun in the commission of the offense, and the Court finds that Mr. Derryberry has been engaged in violence in the past. Again, in mitigation, the Court has considered all of Mr. Derryberry's supporting evidence that he has become a changed man while at Angola. However, after careful consideration, Mr. Derryberry, you are sentenced to forty-

two years at hard labor for killing Randy Fossett. A lesser sentence would certainly depreciate the seriousness of the crime.

In *State v. Johnson*, 09-706 (La.App. 4 Cir. 5/26/10), 41 So.3d 1188, the defendant was adjudicated a second felony offender and sentenced to the maximum sentence pursuant to La.R.S. 15:529.1. The underlying offense was manslaughter. Defendant and a cohort brutally stomped a man unconscious in front of his pregnant girlfriend and put his body into a dumpster. While the fourth circuit did not name the predicate offense, it noted that, "Although the sentence imposed on Mr. Johnson is severe and there is no indication that he has a lengthy prior record or record of violent offenses, it cannot be said that the sentence is nothing more than the purposeless imposition of pain and suffering." *Id*. at 1210.

In *State v. Mickey*, 604 So.2d 675 (La.App. 1 Cir. 1992), *writ denied,* 610 So.2d 795 (La.1993), defendant, who was charged with second degree murder for shooting the victim in the head during an armed robbery, was convicted of manslaughter and received a maximum sentence of forty-two years as a habitual offender. Defendant's criminal record consisted of a misdemeanor conviction for simple battery and two felony convictions for attempted simple escape and attempted unauthorized use of a movable. Finding that the "instant offense was clearly the worst type of offense in the category of manslaughter, and defendant's criminal record indicated he is the worst type of offender," the fourth circuit concluded that the maximum sentence of forty-two years was not excessive. *Id*. at 679.

In *State v. Hyman,* 10-335 (La.App. 5 Cir. 2/15/11), 62 So.3d 146, *writ denied,* 11-558 (La. 9/30/11), 71 So.3d 282, wherein the maximum prison term for manslaughter was raised to forty years, and defendant was sentenced as a second felony habitual offender to the maximum of eighty years. The fifth circuit affirmed the sentence, noting:

We find the trial court did not abuse its broad discretion in imposing the maximum habitual offender sentence. First, the evidence at trial could have supported a conviction for the charged offense, second degree murder, an offense that carries a mandatory life sentence. Louisiana courts have found that the fact that the evidence might have supported a verdict of second degree murder is an appropriate sentencing consideration where the defendant has been convicted of the lesser offense of manslaughter. *See State v. Roussel*, 424 So.2d 226, 231-232 (La.1982), *overruled on other grounds by State v. Jackson*, 480 So.2d 263, 268; *State v. Wooden,* 572 So.2d 1156, 1161 (La.App. 1 Cir.1990).

*Id.* at 155.

In *State v. Batiste,* 09-521, (La.App. 3 Cir. 12/09/09), 25 So.3d 981, this circuit reaffirmed its prior holdings affirming forty year sentences, where defendants pled guilty to manslaughter , although the original charge was either first or second degree murder. In so doing, this court held that those defendants benefitted greatly from the plea agreement because a conviction for either first or second degree murder carries a maximum penalty of life imprisonment. *State v. Pickens,* 98-1443 (La.App. 3 Cir. 4/28/99), 741 So.2d 696, *writ denied,* 99-1577 (La. 11/5/99) (citations omitted).

In *State v. Wooden,* 572 So.2d 1156 (1990), the first circuit affirmed a thirty year sentence for manslaughter for a defendant who had been adjudicated a second felony habitual offender. In its ruling, the first circuit found that the sentence of thirty years imposed on the defendant was not excessive. The defendant's sentence was properly based on his conviction for manslaughter, coupled with adjudication as a second habitual offender; thus, he was exposed to a minimum sentence of seven years at hard labor and a maximum sentence of forty-two years at hard labor. *See* La.R.S. 14:31; La.R.S. 15:529.1.

Considering all of the above, this court cannot say that the trial court abused its considerable discretion when it sentenced Defendant to forty-two years imprisonment for killing his step-brother. Defendant was originally charged with second degree

21

murder. Had Defendant gone to trial and been convicted of second degree murder, he would have received a sentence of mandatory life imprisonment.

## DISPOSITION

While the delay between the filing of the bill of information and the adjudication hearing was extraordinary, Defendant has failed to show how he was prejudiced by the delay. Accordingly, the habitual offender adjudication is affirmed. Furthermore, the sentence of forty-two years is not excessive considering the facts of the case, the nature of the crime, and similar sentences imposed for similar crimes by other jurisdictions.

**HABITUAL OFFENDER SENTENCE AFFIRMED.**